Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
October 2, 2017

**2017 CO 96**

**No. 16SC599, <u>Hardegger v. Clark</u>—Contribution—Bankruptcy Discharge—Tax Withholding Liability—26 U.S.C. §6672(d).**

This case requires the supreme court to determine when the right of contribution provided in 26 U.S.C. § 6672(d) (2012) gives rise to a "claim" under the United States Bankruptcy Code.

Applying the "conduct test," under which a claim arises for bankruptcy purposes at the time the debtor committed the conduct on which the claim is based, the supreme court concludes that the petitioner's claim for contribution arose when the parties' jointly owned company incurred federal tax withholding liability, rendering the parties potentially responsible for that debt. Because this conduct occurred before the respondents filed their bankruptcy petition, the court concludes that the petitioner's claim constituted a pre-petition debt that was subject to discharge.

Accordingly, the supreme court affirms the judgment of the court of appeals.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 96

### Supreme Court Case No. 16SC599
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA1370

### Petitioner:

Ann Hardegger,

v.

### Respondents:

Daniel Clark and Cheryl Clark.

### Judgment Affirmed
*en banc*
October 2, 2017

**Attorneys for Petitioner:**
Rose Walker, L.L.P.
Paul M. Grant
  *Denver, Colorado*

**Attorneys for Respondents:**
Boog & Cruser, P.C.
Victor F. Boog
  *Lakewood, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1 This case principally requires us to determine when the right of contribution provided in 26 U.S.C. § 6672(d) (2012) gives rise to a "claim" under the United States Bankruptcy Code. The petitioner, Ann Hardegger, filed a complaint in the district court seeking contribution from the respondents, Daniel Clark and Cheryl Clark, for their proportionate share of a payment she made to the Internal Revenue Service ("IRS") in full satisfaction of the parties' joint and several tax liabilities. The district court found the Clarks responsible for one-half of the IRS indebtedness and entered summary judgment in Hardegger's favor. A division of the court of appeals reversed, however, concluding that Hardegger's contribution claim constituted a pre-petition debt that had been discharged in the Clarks' bankruptcy case. Hardegger v. Clark, No. 15CA1370, slip op. at 10 (Colo. App. May 26, 2016).

¶2 We granted certiorari and now affirm.[1] Applying the "conduct test," under which a claim arises for bankruptcy purposes at the time the debtor committed the

---

[1] Specifically, we granted certiorari to review the following issues:

1. Whether the court of appeals erred in concluding that a claim for contribution pursuant to 26 U.S.C. § 6672(d) that accrued when the petitioner paid a tax penalty under 26 U.S.C. § 6672(a) in December 2014 was a claim subject to administration in the respondents' bankruptcy proceeding filed in October 2010.

2. Whether the court of appeals exceeded the scope of its review by concluding that the petitioner's claim for contribution pursuant to 26 U.S.C. § 6672(d) was discharged in the respondents' bankruptcy proceeding.

3. Whether the court of appeals mistakenly relied on the pre-petition conduct of a non-debtor entity to conclude that the petitioner's claim for contribution pursuant to 26 U.S.C. § 6672(d) was a claim subject to

2

conduct on which the claim is based, we conclude that Hardegger's claim for contribution arose when the parties' jointly owned company incurred federal tax withholding liability between 2007 and 2009, rendering Hardegger and Clark potentially responsible for that debt. Because this conduct occurred before the Clarks filed their bankruptcy petition in 2010, we further conclude that Hardegger's claim constitutes a pre-petition debt that was subject to discharge.

## I. Facts and Procedural History

¶3 The material facts in this case are undisputed. The parties are former co-owners of C2H2, Inc. ("C2H2"), a traffic control company. Hardegger and Cheryl Clark each owned a 26% share in C2H2, while Daniel Clark and Hardegger's husband, Jeffrey Hardegger, each owned a 24% share.

¶4 Beginning in 2007 and continuing through the first quarter of 2009, C2H2 failed to remit to the IRS federal payroll taxes that had been withheld from its employees. As a result, in November 2009, the IRS recorded a federal tax lien against C2H2.

¶5 Shortly thereafter, the Hardeggers filed a lawsuit against C2H2 and the Clarks seeking, among other things, judicial dissolution of C2H2. In that lawsuit, the parties stipulated to the appointment of a special master, and the special master determined

---

administration in the respondents' bankruptcy proceeding filed in October 2010.

In their answer brief, the Clarks also ask us to review, as an "additional issue on appeal," the district court's determination that Daniel Clark is jointly and severally liable on the contribution claim at issue in this case. The Clarks did not cross-petition for a writ of certiorari, however, nor is the issue fairly comprised within the above-listed issues. Accordingly, the Clarks' contention is not properly before us, and we do not consider it further. See C.A.R. 53(a)(1).

3

that C2H2 was not viable and wound it down. In the course of this wind down, the special master did not pay C2H2's delinquent federal payroll taxes.

¶6 Later, in October 2010, the Clarks filed a joint voluntary Chapter 7 bankruptcy petition and gave notice to their creditors, including the Hardeggers. The Hardeggers apparently did not file a proof of claim in the bankruptcy proceeding, and the bankruptcy court granted the Clarks a discharge on May 10, 2011.

¶7 Subsequently, the IRS conducted a trust fund investigation and determined that Cheryl Clark and Ann Hardegger were "responsible persons" concerning C2H2's unpaid tax liability. The IRS thus recorded federal tax liens against both women for a so-called "trust fund recovery penalty."

¶8 In December 2014, Hardegger paid the total amount of the penalty, comprising all of C2H2's unpaid payroll taxes. She then filed a complaint in the district court seeking contribution, pursuant to 26 U.S.C. § 6672(d), from the Clarks as other persons purportedly liable for those taxes. The Clarks responded, arguing, as pertinent here, that any obligation they might have had to Hardegger with respect to C2H2's tax liability had been discharged in their bankruptcy case.

¶9 Both parties moved for summary judgment, and the district court ultimately granted Hardegger's motion. In so ruling, the court found that (1) the Clarks were responsible for 50% of the amount that Hardegger had paid to the IRS on C2H2's behalf and (2) Hardegger's contribution claim did not "accrue" until 2014, "long after the [Clarks'] debts were discharged in bankruptcy."

4

¶10 For reasons largely not pertinent here, the Clarks subsequently filed a motion to amend the judgment. Although the court ultimately denied that motion, in its order doing so, the court clarified that

> [t]he action giving rise to [Hardegger's] claim for relief for contribution did not occur (the court inarticulately used the word 'accrue' in its prior order) until the [Clarks] failed to pay to [Hardegger] their share of the tax obligation paid by [Hardegger] to the IRS (it did not occur prior to the bankruptcy).

¶11 The Clarks appealed, and in an unpublished decision, a unanimous division of the court of appeals reversed. Hardegger, slip op. at 1, 13. As pertinent here, the division first determined that the district court had improperly focused on when Hardegger's cause of action accrued under 26 U.S.C. § 6672(d) (i.e., when she paid more than her proportionate share of the unpaid federal taxes), rather than when the Clarks committed the conduct on which Hardegger's claim was based (i.e., when C2H2 and its responsible officers did not remit federal withholding taxes, thereby incurring joint and several liability under 26 U.S.C. § 6672(a)). Id. at 8–9. According to the division, the latter, not the former, dictated when Hardegger's claim arose for bankruptcy purposes, and because the material conduct occurred pre-petition, the contribution claim stemming from that conduct likewise arose pre-petition. Id. at 9–10. Then, apparently having discerned no evidence suggesting that Hardegger's claim may have been nondischargeable, the division concluded that the claim had been discharged in the Clarks' Chapter 7 bankruptcy proceeding. Id. Accordingly, the division remanded the case to the district court with orders to enter judgment in favor of the Clarks. Id.

¶12 Hardegger then sought, and we granted, certiorari.

## II. Standard of Review

¶13    We review a grant of summary judgment de novo. Pulte Home Corp. v. Countryside Cmty. Ass'n, 2016 CO 64, ¶ 22, 382 P.3d 821, 826. When, as here, the material facts are undisputed, summary judgment is proper only when the pleadings and supporting documents show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); Ryan Ranch Cmty. Ass'n v. Kelley, 2016 CO 65, ¶ 23, 380 P.3d 137, 142. In determining whether summary judgment is proper, a court grants the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts and resolves all doubts against the moving party. City of Longmont v. Colo. Oil & Gas Ass'n, 2016 CO 29, ¶ 8, 369 P.3d 573, 577–78. In responding to a properly supported summary judgment motion, however, the nonmoving party may not rest on mere allegations or demands in its pleadings but must provide specific facts demonstrating a genuine issue for trial. Id. at ¶ 8, 369 P.3d at 578.

## III. Analysis

¶14    We begin by discussing when a claim arises under the Bankruptcy Code, as well as the three primary approaches that have emerged for making such a determination, namely, (1) the accrual test, (2) the conduct test, and (3) the alternatively described fair contemplation, foreseeability, pre-petition relationship, or narrow conduct test. After agreeing with the parties that the conduct test applies here, we analyze the contribution claim at issue under that test. Finally, we consider Hardegger's contention that the division exceeded the scope of its review in this case.

6

## A. When a Claim Arises Under the Bankruptcy Code

¶15 Subject to certain statutory exceptions not pertinent here, a Chapter 7 discharge discharges a debtor from all debts that arose before the date of the order for Chapter 7 relief. See 11 U.S.C. § 727(b) (2012). The Bankruptcy Code defines the term "debt" to mean "liability on a claim." 11 U.S.C. § 101(12) (2012). "Claim," in turn, is broadly defined to mean "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). This expansive definition is no accident. "In the case of a claim . . . , the legislative history shows that Congress intended that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in bankruptcy. The Code contemplates the broadest possible relief in the bankruptcy court." Grady v. A.H. Robins Co., 839 F.2d 198, 202 (4th Cir. 1988); accord In re Parker, 313 F.3d 1267, 1269–70 (10th Cir. 2002).

¶16 Although the Code does not separately define "contingent claim," courts have described a "contingent debt" as one that the debtor will be called on to pay only upon the occurrence or happening of an extrinsic event that will trigger the liability of the debtor to the alleged creditor. See, e.g., In re City of Detroit, 548 B.R. 748, 762 (Bankr. E.D. Mich. 2016). Thus, a right to payment that at the time of the bankruptcy filing is not yet enforceable under non-bankruptcy law (e.g., a claim that has not yet accrued under the rules ordinarily applicable to non-bankruptcy claims) may nonetheless constitute a claim that is dischargeable in the bankruptcy case. See In re Huffy Corp., 424 B.R. 295, 301 (Bankr. S.D. Ohio 2010); see also In re Fretter, Inc., No. 96-15177, 2000

WL 1780256, at *3 (Bankr. N.D. Ohio Sept. 29, 2000) ("A claim does not arise post-petition simply because the time for payment is triggered by an event that happens after the filing of the petition. As a result, 'it is possible that a right to payment that is not yet enforceable at the time of filing [sic] of the petition under non-bankruptcy law, may be defined as a claim within Section 101(5)(A) of the Bankruptcy Code.'") (quoting In re R.H. Macy & Co., 236 B.R. 583, 589 (Bankr. S.D.N.Y. 1999)); In re Edge, 60 B.R. 690, 701 (Bankr. M.D. Tenn. 1986) ("The policies that guide interpretation of the Bankruptcy Code are served by the conclusion that a claim arises at the time of the negligent act, notwithstanding that access to other courts or the running of a statute of limitation may be timed from some other point in the relationship between tortfeasor and victim.").

¶17 In determining whether a contingent debt constitutes a pre-petition claim, finding that a claim arose "at the earliest point possible" will, in most circumstances, "best serve the policy goals underlying the bankruptcy process." Saint Catherine Hosp. of Ind., LLC v. Ind. Family & Soc. Servs. Admin., 800 F.3d 312, 317 (7th Cir. 2015). This rule, however, is not without limits:

> The expansive definition of claim and its legislative history "surely points us in a direction, but provides little indication of how far we should travel [in delimiting a contingent claim]." After all, a contingent right to payment is, by definition, a right to payment that, because it is contingent, is not yet and may never be a right to payment. In the strangely appropriate language of philosopher Martin Heidegger, it might be said to exist somewhere on a continuum between being and nonbeing. At some point on that continuum, a right to payment becomes so contingent that it cannot fairly be deemed a right to payment at all.

In re CD Realty Partners, 205 B.R. 651, 656 (Bankr. D. Mass. 1997) (quoting In re Chateaugay Corp., 944 F.2d 997, 1003 (2d Cir. 1991)).

¶18    Attempts to define this point have yielded three primary approaches for determining when a claim arises for bankruptcy purposes.

¶19    Under the "accrual test," a claim arises only when a creditor's cause of action accrues under the pertinent non-bankruptcy law. See In re M. Frenville Co., 744 F.2d 332, 337 (3d Cir. 1984), overruled by In re Grossman's Inc., 607 F.3d 114, 121 (3d Cir. 2010). In the years after it was first adopted in Frenville, the accrual test garnered widespread criticism for not capturing the breadth of relief envisioned by the Bankruptcy Code. See Grossman's, 607 F.3d at 120–21 (discussing post-Frenville case law and other authority). Frenville has since been overruled by the Third Circuit, see id. at 121, and no court now appears to follow the Frenville approach, see In re Andrews, 239 F.3d 708, 710 n.7 (5th Cir. 2001) (describing Frenville's approach as having been "universally rejected").

¶20    Under the "conduct test," a claim arises at the time of the debtor's conduct that gives rise to the claim, even if the actual injury or accrual of a cause of action does not occur until after the bankruptcy filing. Huffy, 424 B.R. at 304. Applying this test, courts have concluded that a claim arose under the Bankruptcy Code in a wide array of circumstances in which the claim had not yet accrued under non-bankruptcy law. See, e.g., Parker, 313 F.3d at 1270 (concluding that the claimant's legal malpractice claim arose on the date that the malpractice allegedly occurred, which was prior to the filing of the debtor's petition); In re Rainbows United, Inc., 547 B.R. 430, 432 (Bankr. D. Kan. 2016) (concluding that a corporate officer's indemnity claim against the corporation to recover the payroll taxes that she paid as a "responsible person" on the corporation's

behalf arose when, prior to the bankruptcy petition, the corporation failed to remit the taxes at issue; even though the IRS did not assess the liability against the officer until years later, federal law made it likely that she would be liable for the unpaid taxes when the corporation did not remit them). Indeed, in some cases, courts have concluded that a claim arose under the Bankruptcy Code even though the claimant's injury did not manifest itself until long after the bankruptcy proceeding had concluded. See, e.g., Grossman's, 607 F.3d at 117, 125 (concluding that the claimant's asbestos-related claims arose for bankruptcy purposes at the time the claimant was exposed to the debtor's asbestos-containing product, even though she did not manifest symptoms of asbestos-related illness until almost thirty years after the exposure and almost ten years after the bankruptcy court had confirmed the debtor's plan of reorganization).

¶21 Because the conduct test, unlike the accrual test, sweeps broadly enough to capture contingent claims, it has been described as "the one more in tune with the plain language and the policy underlying the Bankruptcy Code." Parker, 313 F.3d at 1269. At the same time, however, because its application may result in discharging creditors' claims before they receive notice of the bankruptcy case or even have reason to know that their claims exist, the conduct test has drawn criticism "for failing to address the due process rights of creditors" in such cases. Huffy, 424 B.R. at 304.

¶22 To address these due process concerns, a third approach, described variously as the "fair contemplation," "foreseeability," "pre-petition relationship," or "narrow conduct" test, has emerged. City of Detroit, 548 B.R. at 763. This approach considers whether a pre-petition relationship such as a contract, exposure, impact, or privity

10

existed between the debtor and creditor such that a possible claim could be deemed to have been within the fair contemplation of the creditor at the time the debtor's petition was filed.  Id.  Under this test, a claim is considered to have arisen pre-petition if the creditor could have ascertained through the exercise of reasonable due diligence that it had a claim at the time the petition was filed.  Id.  Courts have observed that this test ameliorates the above-noted concern that a bankruptcy proceeding cannot identify and afford due process to claimants with certain unmatured or contingent claims.  See, e.g., Saint Catherine Hosp., 800 F.3d at 316.

¶23    The Clarks argue, and Hardegger concedes, that the conduct test is the applicable test here.  In light of the foregoing authority and the facts now before us (including the fact that the Clarks notified Hardegger of their bankruptcy proceedings after C2H2 did not remit the payroll taxes at issue, thus obviating any due process concern), we agree.[2] Accordingly, we turn to the question of whether Hardegger's contribution claim arose pre- or post-petition.

## B. Hardegger's Contribution Claim

¶24    The Internal Revenue Code imposes joint and several liability on each person who is responsible for collecting, accounting for, and paying over taxes and who willfully fails to do so, and the Code further provides that each such "responsible person" can be held liable for the total amount of taxes not paid.  Quattrone Accountants, Inc. v. IRS, 895 F.2d 921, 926 (3d Cir. 1990).

---

[2] We also note that the parties in this case had a pre-petition relationship.  We express no opinion, however, as to whether such a relationship is always required to establish a "claim" under the Bankruptcy Code.

¶25 Specifically, 26 U.S.C. § 6672(a) provides, as pertinent here:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

¶26 When more than one person is liable for the penalty due under § 6672(a), 26 U.S.C. § 6672(d) provides a right of contribution to each responsible person who pays more than his or her proportionate share of that penalty:

> If more than 1 person is liable for the penalty under subsection (a) with respect to any tax, each person who paid such penalty shall be entitled to recover from other persons who are liable for such penalty an amount equal to the excess of the amount paid by such person over such person's proportionate share of the penalty.

¶27 By this provision's plain language, a cause of action under § 6672(d) accrues only after payment in excess of one's proportionate share of the penalty due. Id.; see also Happy v. McNeil, No. SA-14-CA-201, 2015 WL 502312, at *2 (W.D. Tex. Feb. 5, 2015) ("A responsible person who is liable for the penalty cannot seek contribution until he has paid his proportionate share of the penalty."). Indeed, the parties do not appear to dispute that Hardegger's right to sue for contribution arose in 2014 when she paid the entire penalty. As noted above, however, the conduct test dictates that a claim arises for bankruptcy purposes not when it accrues or becomes actionable for non-bankruptcy purposes but rather when the debtor's conduct giving rise to the alleged liability occurs. The question thus becomes: what conduct gave rise to Hardegger's § 6672(d) claim?

12

¶28    On this point, we deem <u>Ford v. Cicoletti</u>, No. C-09-00573 RMW, 2010 WL 1838966 (N.D. Cal. May 4, 2010), instructive.  In <u>Ford</u>, the IRS made a tax assessment against the parties after their jointly owned company did not collect and pay over certain taxes.  <u>Id.</u> at *1.  The plaintiff paid some of the taxes due, and the parties then entered into an indemnity agreement whereby the defendant agreed to indemnify and hold the plaintiff harmless from any liability in excess of his one-half share.  <u>Id.</u>  The defendant subsequently filed for Chapter 7 bankruptcy protection and received a discharge.  <u>Id.</u> Years later, the plaintiff paid the entire amount of unpaid taxes due plus all penalties and interest and then sued the defendant for contribution pursuant to § 6672(d).  <u>Id.</u>

¶29    In considering when this claim arose under the pre-petition relationship test, the court observed that a claim arises for bankruptcy purposes when the contingent liability is established (i.e., when a joint obligation arises, rather than when a co-obligor's right of contribution ripens or matures into an actionable claim).  <u>Id.</u> at *4.  Applying this principle to the case before it, the court concluded that the plaintiff's contribution claim was a contingent claim that arose

> when the tax debts arose and [the parties] were jointly and severally liable to the applicable taxing authorities. At the time of [the defendant's] bankruptcy, [the plaintiff] possessed a contingent claim that would ripen into an actionable claim against [the defendant] in the event that [the plaintiff] paid more than his fair share of the debt.  [The plaintiff's] claims against [the defendant] arose for bankruptcy purposes when the tax debt arose, not when [the plaintiff] later paid more than his fair share of the debts.

<u>Id.</u>

¶30 The court further observed that the fact that the plaintiff did not necessarily know that the defendant would file bankruptcy proceedings—or that, after the defendant had obtained a discharge, the plaintiff would be required to pay the defendant's share of the unpaid taxes—did not remove his contribution claim from the realm of the parties' fair contemplation. Id. To the contrary, in the court's view, the parties incurred joint and several liability to the taxing authorities prior to the defendant's bankruptcy, and based on their presumed knowledge of the tax laws and their entry into an indemnity agreement, "the possibility that one of them would fail to pay his taxes was fairly within their contemplation." Id. Accordingly, the court held that the plaintiff's contribution claim had been discharged in the defendant's bankruptcy. Id.

¶31 Here, although we acknowledge the factual distinctions between Ford and the present case, similar legal reasoning compels the conclusion that Hardegger's contribution claim arose when C2H2 and its responsible officers (i.e., Hardegger and Cheryl Clark) did not pay the federal withholding taxes at issue between 2007 and 2009.

¶32 Specifically, once C2H2 failed to remit its payroll taxes, by operation of law, Hardegger and Clark incurred joint and several liability under § 6672. See id.; accord Quattrone Accountants, 895 F.2d at 926; see also United States v. Edwards, 572 F. Supp. 1527, 1534 (D. Conn. 1983) ("The company's liability for withholding taxes arises at the moment the taxes are withheld from employee salaries; a contingent liability is immediately created for the amount withheld. The person responsible for paying the company's withholding taxes is also contingently liable from that moment.") (citation

14

omitted); cf. In re Serignese, 214 F. Supp. 917, 920 (D. Conn. 1963) (rejecting the view that assessment of a penalty on the responsible person was a prerequisite to tax liability), aff'd sub nom. Goring v. United States, 330 F.3d 960 (2d Cir. 1964).

¶33 And at the moment that Hardegger and Clark incurred such liability, Hardegger held a contribution claim against Clark, contingent on whether Hardegger would ultimately elect to pay more than her fair share of the tax debt. See Ford, 2010 WL 1838966, at *4; cf. Rainbows United, 547 B.R. at 438–39 ("From the moment [the debtor-corporation] failed to remit the payroll taxes, [the claimant-officer] was in jeopardy of being assessed a [tax penalty]. Whatever indemnification right she may have had arose then, too. Even though the IRS did not assess the [penalty] against her until after [the corporation's] plan had been confirmed, she was in peril of it as early as 2007 and though her claim against [the corporation] may not have matured until she learned of the assessment, that debt was certainly contingent from the moment [the corporation] failed to pay the trust fund deposit, well before confirmation.").

¶34 Accordingly, we conclude that Hardegger's contribution claim arose for bankruptcy purposes when C2H2 and its responsible officers incurred tax liability for which Hardegger and Clark were jointly and severally responsible and that, therefore, Hardegger's contribution claim was a pre-petition claim.

¶35 For two reasons, we are not persuaded otherwise by Hardegger's contention that because an individual's tax penalty liability is "separate and distinct" from a corporate debtor's liability, the conduct giving rise to Hardegger's claim was the IRS's penalty assessment under § 6672(a).

15

¶36 First, Hardegger cites no authority, and we are aware of none, demarcating § 6672 liability in this way under the Bankruptcy Code. To the contrary, Hardegger's position appears to ignore longstanding precedent recognizing that § 6672 liabilities become debts for bankruptcy purposes when the taxes are withheld and not remitted to the IRS—not when a tax penalty is assessed. See IRS v. Lee, 184 B.R. 257, 262 (W.D. Va. 1995); Serignese, 214 F. Supp. at 920.

¶37 Second, as noted above, the conduct test focuses solely on the conduct of the debtor. See Huffy, 424 B.R. at 304. Here, the Clarks' only material conduct was their failure to pay the taxes that were owed on behalf of C2H2, and it is this conduct that underlies the parties' joint and several liability and, ultimately, Hardegger's contribution claim. See 26 U.S.C. § 6672(a), (d); Quattrone Accountants, 895 F.2d at 926.

¶38 Because the Clarks' pertinent conduct occurred prior to October 2010, we agree with the division that Hardegger's contribution claim arose pre-petition and, consequently, was a "claim" that was subject to discharge in the Clarks' bankruptcy proceedings. We thus turn to the scope-of-review question raised by Hardegger.

## C. Scope of Review

¶39 Based on her view that the division's review was limited to whether the district court had correctly concluded that the contribution claim was a post-petition debt, Hardegger asserts that the division erred in further determining that her contribution claim was discharged in the Clarks' bankruptcy proceedings. We are not persuaded.

¶40 The Clarks first raised the issue of whether Hardegger's claim was discharged in their answer to Hardegger's complaint. This issue was then re-raised and addressed in

16

no fewer than four motions filed in the district court. And on direct appeal in the court of appeals, the Clarks listed as an issue for review "[w]hether the trial court erred as a matter of law in concluding on summary judgment that Ann M. Hardegger's <u>claim for contribution was not subject to the Clarks' bankruptcy discharge on May 10, 2011</u>, because said claim did not accrue (or occur) until 2014." (Emphasis added.) Accordingly, Hardegger's narrow characterization of the issue presented to the division is belied by the record.

¶41 Nor are we swayed by Hardegger's insistence that as a result of the division's decision, she is unable to seek a determination of nondischargeability in the bankruptcy court. Hardegger elected to file her claim in state court, and in litigating that claim, she chose to rely solely on the argument that her right to contribution arose post-petition. Indeed, until she sought certiorari in this court, Hardegger does not appear to have suggested that her claim (if deemed to have arisen pre-petition) might nonetheless be excepted from discharge. Having not made this argument below, when the Clarks unmistakably raised the dischargeability of her claim, Hardegger cannot do so now.

¶42 Accordingly, we perceive no error in the division's conclusion that Hardegger's contribution claim was discharged.

### III. Conclusion

¶43 For these reasons, we conclude that Hardegger's contribution claim was a pre-petition "claim" under the Bankruptcy Code and that the division correctly concluded that this claim was discharged in the Clarks' bankruptcy proceedings.

¶44     Accordingly, we affirm the judgment of the court of appeals and remand this case for further proceedings consistent with this opinion.