Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
May 20, 2019

**2019 CO 38**

**No. 17SC735,** *City of Golden v. Sodexo America, LLC*—**Taxation**—**Sales Tax**—
**Wholesale Tax Exemption.**

In this sales tax dispute, the supreme court considers whether a food service
vendor to a university sold meals directly to students with meal plans at retail, or whether
the vendor sold those meals to the university at wholesale.  If the meal-plan meals were
sold at retail to the students, they would be taxable under the relevant municipal
ordinances; if the meals were sold at wholesale to the university, then they would be
exempt from taxation.

After examining the plain language of the ordinances, the supreme court holds
that the food service vendor sold the meal-plan meals to the university at wholesale, and
therefore, the transactions were tax-exempt.  Accordingly, the supreme court affirms the
decision of the court of appeals.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

---

**2019 CO 38**

---

**Supreme Court Case No. 17SC735**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 16CA1355

---

**Petitioners:**

City of Golden, Colorado and Jeff Hansen, in his official capacity as Finance Director of the City of Golden, Colorado,

v.

**Respondent:**

Sodexo America, LLC.

---

**Judgment Affirmed**
*en banc*
May 20, 2019

---

**Attorneys for Petitioners:**
Williamson & Hayashi, LLC
David S. Williamson
Mathew M. Munch
        *Boulder, Colorado*

**Attorneys for Respondent:**
Silverstein & Pomerantz LLP
Neil I. Pomerantz
Mark E. Medina
Michelle Bush
        *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Department of Revenue:**
Philip J. Weiser, Attorney General
Russell D. Johnson, Assistant Solicitor General
*Denver, Colorado*

**Attorneys for Amici Curiae Colorado Higher Education Institutions:**
Philip J. Weiser, Attorney General
Stephanie Scoville, Senior Assistant Attorney General
*Denver, Colorado*

Jeremy Hueth, Special Assistant Attorney General
*Denver, Colorado*

**Attorney for Amicus Curiae Colorado Municipal League:**
Dianne M. Criswell
*Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.

¶1     Imagine that two students enter a dining hall at the Colorado School of Mines in the City of Golden. One pays with cash; the other swipes a "BlasterCard" to use a meal-plan credit. Sodexo, Mines' food service provider, collects sales tax on the cash transactions and remits the tax to Golden. Not so when a student swipes a BlasterCard to use a meal-plan credit. That disparity in tax treatment culminated in this case.

¶2     A little background information about BlasterCards helps to flesh out the legal dispute. During the time at issue, Mines loaded each meal-plan student's BlasterCard, which is a student's identification card, with an individual meal plan choice. To use their meal plans, students swiped their BlasterCards at a dining facility. Sodexo had nothing to do with loading the students' BlasterCards with their meal plans—that was all Mines. Sodexo also had no way of knowing if a student had fully paid for his or her meal plan, and Sodexo had no way of enforcing collections against a student who hadn't fully paid. Again, that was all taken care of by Mines. But neither Mines nor Sodexo collected any sales tax on these meal-plan meals.

¶3     When Golden's Finance Department audited Sodexo and discovered that sales tax for these meal plans had not been collected, it issued a sales and use tax assessment. Sodexo protested and lost, so Sodexo appealed to the district court. The court granted summary judgment for Golden, finding that Sodexo had engaged in taxable retail sales directly to Mines' students, rather than tax-exempt wholesale sales to Mines.

¶4     Undeterred, Sodexo appealed again. This time, a unanimous division of the court of appeals reversed the judgment of the district court, concluding that there were two sales transactions at issue: one between Mines and Sodexo, and the other between Mines

3

and its students. The division further concluded that Mines and Sodexo were engaged in tax-exempt wholesale transactions. Accordingly, the division remanded for entry of judgment in Sodexo's favor.

¶5 We granted Golden's request to review the division's decision. But, having done so, we agree with the division that two transactions took place: one between Sodexo and Mines, another between Mines and its students. Like the division below, we conclude that Sodexo sold the meal-plan meals to Mines at wholesale, and, accordingly, these transactions were exempt from taxation under the Code. We therefore affirm the judgment of the court of appeals.

## I. Facts and Procedural History

¶6 Mines is a public post-secondary education institution. At all relevant times, it required all students residing in an on-campus residence hall to purchase a meal plan.

¶7 Mines and its students entered into Residence Hall Contracts, which detailed the various meal plans available for purchase and the prices per plan. These contracts also outlined the number of meals included in each meal plan option, as well as the amount of "Munch Money," a declining balance of points loaded onto each student's identification card that was accepted at any on-campus dining facility, apportioned to each plan. Students with meal plans paid Mines directly for the cost of the plans.

¶8 In May 2011, Mines separately contracted with Sodexo to fulfill its obligations to provide meals and food options for its students. Sodexo agreed to "provide food services for [Mines'] students, faculty, staff, employees and guests." "Food services" was defined as "the preparation, service and sale of food, beverages, and select goods, merchandise

4

and other items to be agreed upon by [Mines] and [Sodexo] . . . including catering, concessions, retail and meal plans." Mines agreed to purchase meals exclusively from Sodexo that Sodexo would then prepare and serve at Mines' dining facilities. The contract required Sodexo to operate and manage all of Mines' dining facilities using its own employees, not Mines' employees.

¶9 Though Mines delegated the actual food services preparation, service, and sales to Sodexo, it retained much contractual authority over the way Sodexo provided these services. The products Sodexo produced pursuant to the contract became the sole property of Mines. Mines set the prices of the meal plans, and those prices could only change with Mines' prior written approval. Mines also required Sodexo to meet its food quality standards. The contract even included a provision giving Mines the authority to, "at its discretion, require inclusion of certain foods and food supplies, or specific brands in the inventory and menus of [Sodexo]."

¶10 Cash-paying students, faculty, and staff paid Sodexo directly at the register. (And Sodexo collected sales tax from its cash-paying patrons, as required by Golden's Municipal Code.) However, that wasn't the case for the students using meal plans or Munch Money. Receiving payment from those students took two steps.

¶11 Step One: the BlasterCards. As noted, students purchased meal plans and Munch Money from Mines through their Residence Hall Contracts. Each BlasterCard was linked to a student's account and loaded with the student's meal plan and Munch Money balance. Students then swiped their cards to obtain meals at a dining hall or use their

5

Munch Money. Each swipe of a BlasterCard reduced the number of available meals or Munch Money left for the semester.

¶12   Step Two: the invoices. Sodexo provided Mines with reports detailing student participation in the meal plans. Using these reports, Sodexo then invoiced Mines based on the student participation in the meal plans and the per-meal price established in the contract. Those prices were far less than the per-meal prices Mines charged students through their Residence Hall Contracts. And Mines kept the difference.

¶13   Sodexo didn't directly charge the meal-plan students—that responsibility fell to Mines. Mines billed each student at the beginning of the semester for the cost of their tuition, room and board, which included the meal plan, and other fees. And as noted, Students paid Mines directly, and those funds were placed into a deposit account where the funds "intermingled" with Mines' other funds. Mines didn't set the students' payments aside for Sodexo. Rather, Mines paid Sodexo monthly from its general deposit account, presuming it had sufficient budgeted funds for this purpose from the State.

¶14   If a student was derelict in paying her meal plan fees under the Residence Hall Contract, then Mines alone had the authority to take action against that student. Mines could place a hold on a student's account or prevent a student from entering a dining facility. Sodexo, on the other hand, had no recourse against a student who failed to pay her meal plan charges. And, Sodexo had no way of knowing whether a student's account was up-to-date or in default.

¶15   Golden audited Sodexo, and in November 2014, it levied a three percent tax amounting to $234,481 covering the period from June 2011 through March 2013. This

amount was not based on the amount the students paid Mines for their meal plans; instead, it was based on the lower prices that Mines paid Sodexo. Sodexo protested the assessment. After a hearing, Golden denied Sodexo's appeal through the city's Finance Director, who concluded that Sodexo was involved in taxable retail sales.

¶16 Sodexo filed an appeal in the district court, arguing, in part, that the services Sodexo provided pursuant to its contract with Mines were tax-exempt wholesale transactions under Golden's Municipal Code. Golden countered that Sodexo "is engaged in non-exempt retail sales directly to dining patrons and is not making wholesale sales to [Mines]."

¶17 Both parties moved for summary judgment. The district court ruled for Golden, concluding that Golden established that there was no genuine issue of material fact, and "that there is significant doubt that Sodexo is entitled to [Golden's Municipal Code's] wholesale sales exemption." In coming to this conclusion, the court cited *City of Golden v. Aramark Educational Services, LLC*, 2013 COA 45, 310 P.3d 262, for the proposition that tax exemptions must be construed narrowly and in favor of the taxing authority. The trial court pointed to two facts that raised doubts as to whether Mines acquired Sodexo's food and food services for resale: (1) Mines didn't obtain physical possession over the food items because the food was solely in Sodexo's possession until served to the meal-plan students, and (2) Mines' purpose in buying food and food services from Sodexo was to fulfill its contractual obligations to the meal-plan students, as set out in the Residence Hall Contracts. Accordingly, the trial court reasoned that because it "must

7

resolve these doubts against the exemption," Sodexo did not meet its burden to establish a genuine issue of material fact supporting its claim for tax exemption.

¶18    A unanimous division of the court of appeals reversed. It reasoned that "consideration is exchanged for food on two occasions: once when a student pays Mines for a meal plan or Munch Money, and again when Mines pays Sodexo periodically based on the number and types of meals provided to [the meal-plan] students." *Sodexo Am., LLC v. City of Golden*, 2017 COA 118, ¶ 21, __ P.3d __. The division concluded that Sodexo and the meal-plan students "aren't engaging in a buyer-seller transaction" because, by using their BlasterCards, these students weren't giving Sodexo consideration for the food and services they obtained. *Id.* at ¶¶ 20–21. Instead, the students were merely reducing the amount of meals or Munch Money available under their meal plan. *Id.* at ¶ 21. The division then considered what type of sales occur when Mines pays Sodexo for meals: taxable retail sales or tax-exempt wholesale sales? The court of appeals held that Sodexo sells meal plans to Mines at wholesale and, since the Golden Municipal Code expressly exempts wholesale transactions from taxation, Golden's assessment was invalid. *Id.* at ¶¶ 27–29. The division recognized that its holding conflicted with another division's opinion in *Aramark*, which held just the opposite—that a different food service vendor for Mines was not entitled to the wholesale exemption. *See id.* at ¶¶ 34–36.

¶19    Golden filed a petition for certiorari, arguing that Sodexo was engaged in direct retail sales to all students, including those students with meal plans, and therefore was not entitled to the wholesale sales exemption. According to Golden, Mines was just a collection agent—merely receiving money from the students with meal plans and

8

transferring those sums to Sodexo. Sodexo argues that it was engaged in tax-exempt wholesale sales to Mines, not direct retail sales to the meal-plan students.

¶20    We granted certiorari.[1]

## II. Analysis

¶21    We begin with a brief recitation of the applicable standard of review and interpretive principles. We then turn to the relevant provisions of Golden's Municipal Code. Focusing on the plain language of these ordinances, we conclude that two transactions occurred here — one between Mines and Sodexo, another between Mines and its students. Then, based on our interpretation of the Code's provisions, we determine that Mines and Sodexo were engaged in wholesale transactions. We ultimately conclude Sodexo was entitled to the wholesale sales exemption.

## A. Standard of Review & Interpretive Principles

¶22    This court reviews a trial court's grant of summary judgment de novo. *Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 2018 CO 54, ¶ 27, 420 P.3d 223, 229 (citing *Hardegger v. Clark*, 2017 CO 96, ¶ 13, 403 P.3d 176, 180). Similarly, the interpretation of a municipal ordinance is a question of law and thus subject to de novo review. *Town of Erie v. Eason*, 18 P.3d 1271, 1274 (Colo. 2001).

---

[1] We granted certiorari to review the following issue:

1. Whether the court of appeals erred in determining that Sodexo sells food to the Colorado School of Mines at wholesale, such that the subject transactions are exempt from taxation under the Golden Municipal Code.

¶23    When interpreting a municipal ordinance, we employ our well-worn tools of statutory interpretation. *See MDC Holdings, Inc. v. Town of Parker*, 223 P.3d 710, 717 (Colo. 2010). "Our primary task when interpreting local government legislation is to determine and give effect to the intent of the body enacting it." *Id.* So, we look first to the text of the ordinance, and if it is clear and unambiguous, we apply it as written. *Id.* "[I]f the language . . . is susceptible of more than one reasonable interpretation, and is therefore considered ambiguous," then we may turn to interpretive aids "to help determine which of these reasonable interpretations actually embodies the legislative intent." *City & Cty. of Denver v. Expedia, Inc.*, 2017 CO 32, ¶ 14, 405 P.3d 1128, 1132 (plurality opinion) (citations omitted). Because we ultimately conclude that the Code is clear and unambiguous, we don't resort to additional constructive canons and interpretive aids.

## B. Golden's Municipal Code

¶24    Golden is a home-rule municipality and, as such, has the authority to levy and collect taxes. Golden, Colo. Charter Preamble (2018); *see also* Colo. Const. art. XX, § 6.

¶25    Golden levies a three percent sales tax on the purchase price of "all sales of tangible personal property and services specified in subsection 3.03.030(a)." Golden, Colo., Municipal Code § 3.03.010(a) (2015).[2] "[S]ales tax" is the "tax to be collected and remitted

---

[2] Like the court of appeals, we apply the 2015 version of the Code. The briefs and the trial court documents don't clearly specify which code year has been used and, accordingly, without any information to the contrary, we too will review the same ordinances that were reviewed by the court below.

10

by a retailer on sales taxed under this Code." Golden, Colo., Municipal Code § 3.02.010 (2015). So, a "sale" by a "retailer" triggers the taxable event.

¶26 The Code defines a "sale" or "purchase" as "the acquisition *for any consideration* by any person of tangible personal property or taxable services." *Id.* (emphasis added). The Code specifies that "sale" or "purchase" includes "property and services acquired by . . . [t]ransfer . . . of title or possession or both to tangible personal property." *Id.* ("Acquisition" is not expressly defined in the code. *See id.*) A "retailer" sells "tangible personal property or services at retail." *Id.* And a retail sale is defined broadly by what it is not: "[A]ll sales except wholesale sales." *Id.*

¶27 Subsection 3.03.030(a) of the Code outlines which sales transactions are subject to tax, and it specifically includes "all sales of food, prepared food, or food for immediate consumption." Golden, Colo., Municipal Code § 3.03.030(a)(4) (2015). The Code also exempts certain transactions from sales tax, including wholesale sales. Golden, Colo., Municipal Code § 3.03.040(13) (2015). A wholesale sale is a "sale[] to licensed retailers, jobbers, dealers, or wholesalers for *resale*. Sales by wholesalers to consumers are not wholesale sales." § 3.02.010 (emphasis added). Those latter types of sales would constitute taxable retail sales. *See id.*

¶28 We've already noted that a "sale" constitutes the taxable event, so we must determine when the "sale" of the meals occurred. *See id.* A "sale" is completed when one party acquires property, products, or services in exchange for consideration. We know the students obtained their meals at the dining halls. We therefore must determine when the students provided consideration for their meals. *See id.* Was consideration for the

11

meals exchanged when the students paid Mines for the meal plans, as Sodexo suggests? Or, did the taxable event occur when the students swiped their BlasterCards and physically obtained the meals, as Golden argues?

¶29 We agree with Sodexo and the division below. The "sale" of the meals occurred when the students paid Mines for their meal plans as part of their Residence Hall Contracts. While the students were the ultimate consumers of Sodexo's food and food services, that doesn't establish that the meal-plan students bought their food from Sodexo. Indeed, these students didn't provide any consideration to Sodexo for the meals. All these students did was swipe their BlasterCards at Mines' dining premises. And the students didn't pay or promise to pay Sodexo anything with their swipe. There was no "bargained-for" exchange between Sodexo and the students because Sodexo had no control over the price of the meal plans—it was Mines that the students exchanged consideration with. By the time the students swiped their BlasterCards, they have already paid (or at least promised to pay) Mines for the meals—they did so when they signed their Residence Hall Contracts and selected their meal plan. And Mines paid Sodexo monthly for Sodexo's provision of the meals obtained as part of the meal plans. The "swipe" functioned as nothing more than an accounting mechanism that allowed Mines to track the number of meals that a student had used. Sodexo didn't sell its meals directly to the meal-plan students; it sold the meal-plan meals directly to Mines.

¶30 So, we count two distinct transactions where consideration is exchanged for the meal-plan meals. One, when the students paid Mines for their meal plans pursuant to the Residence Hall Contracts, and two, when Mines paid Sodexo under the monthly

invoice. We must now consider what *type* of transaction occurred between Mines and Sodexo to determine whether the transaction was taxable. Again, we agree with Sodexo and the division below—these were wholesale sales transactions.

¶31 Sodexo purchased, prepared, and served food pursuant to its contract with Mines; Mines sold that prepared food and those services to its students under the Residence Hall Contracts at a higher price than what it paid Sodexo. A wholesale sales transaction occurs when a seller sells a product to a buyer for that buyer to subsequently resell. *See* § 3.02.010; *see also Wholesale*, Black's Law Dictionary (10th ed. 2014) (defining "wholesale" as "[t]he sale of goods or commodities usu[ally] to a retailer for resale, and not to the ultimate consumer"). Sodexo's sale of its food and services thus constituted a "sale for resale," and not a sale to the "ultimate consumer" because Sodexo didn't receive any consideration from the ultimate consumer, the students. Rather, it was Mines, acting as a retailer, that sold Sodexo's products and services to the ultimate consumer, the students who purchased meal plans. Sodexo was therefore entitled to the wholesale sales tax exemption in section 3.03.040(13).[3]

---

[3] Our resolution based on the plain language of the Code is further supported by our common-law test laid out in *A.B. Hirschfeld Press, Inc. v. City & County of Denver*, 806 P.2d 917 (Colo. 1991).

At issue in *A.B. Hirschfeld* was whether a commercial printing company's purchase of pre-press materials, such as film and press plates, to fill customers' orders constituted a tax-exempt wholesale purchase or a taxable retail purchase. *See id.* at 919. We created a primary purpose test for determining whether a transaction is wholesale: "[A] purchase of an item of tangible personal property is a purchase for resale and therefore not a purchase at retail if the *primary purpose* of the transaction is the acquisition of the item for

¶32 As noted, a different division of the court of appeals confronted the same substantive legal question in *Aramark* that we address today: Whether Aramark, a company that operated food service facilities on Mines' campus, was engaged in retail sales transactions with students on Mines' meal plans or wholesale sales to Mines. *Aramark*, ¶¶ 13–14, 310 P.3d at 266. The division concluded that the vendor couldn't claim the exemption. In reaching this conclusion, the division discussed the need to construe tax exemptions narrowly and resolve any doubts against the party claiming the exemption. *Id.* at ¶ 11, 310 P.3d at 265–66. The court then turned to the arguments advanced and found both parties offered "several tenable arguments" supporting their positions. *See id.* at ¶¶ 32–34, 310 P.3d at 269–70. The court then declined to decide whose tenable argument was better. *See id.* at ¶ 35, 310 P.3d at 270. Instead, the court determined that there was sufficient doubt as to whether the vendor was entitled to the tax exemption. *Id.* Accordingly, because any such doubts should be resolved against the

resale in an unaltered condition and basically unused by the purchaser." *Id.* at 921 (emphasis added).

Here, Mines purchased food and food preparation services from Sodexo, not for its own use and consumption, but instead to sell that food and those services to its students, thus fulfilling its contractual promises in the Residence Hall Contracts. This satisfies the primary purpose test: Mines purchased food and food preparation services from Sodexo for the primary purpose of reselling that food to its students in an unaltered condition. *See also Slater Corp. v. S.C. Tax Comm'n*, 242 S.E.2d 439, 440 (S.C. 1978) (concluding that a food service vendor was engaged in wholesale sales to a university because "[t]he meals in question were clearly purchased for resale with the students buying their food from the college[] rather than from [the food service vendor]").

party seeking the exemption, the court held that the vendor wasn't entitled to the tax exemption. *See id.*

¶33 The *Aramark* division erred because it failed to give controlling significance to the plain language of Golden's Municipal Code. To the extent that *Aramark* conflicts with our opinion here, we overrule it.[4]

### III. Conclusion

¶34 We hold that Sodexo sold meal-plan meals to the Colorado School of Mines at wholesale, and accordingly, these transactions were exempt from taxation under the Code. We therefore affirm the court of appeals' decision with directions to remand to the district court for further proceedings consistent with this opinion.

---

[4] We are not persuaded otherwise by Golden's invocation of the Tenth Circuit's decision in *Hodgson v. Prophet Co.*, 472 F.2d 196 (10th Cir. 1973), to support its claim that Mines was merely acting as a collection agent for Sodexo.

In *Prophet*, the Tenth Circuit was tasked with determining whether a food service vendor to a college was exempt from the minimum wage and overtime requirements of the Fair Labor and Standards Act (FLSA). *See id.* at 201. The Tenth Circuit concluded that, for purposes of the FLSA, the food service vendor was a "retail or service establishment" because the college did not resell the food prepared by the vendor to the students. *Id.* "[A]ll the college did was to act in the role of a collection agent, rather than a purchaser" by collecting fees from the students and paying the vendor accordingly, while keeping a portion for its trouble. *Id.* at 204–05. Golden urges us to similarly conclude that Mines was merely a collection agent for Sodexo. Golden argues Mines did just that: It charged its students a slightly higher price for Sodexo's services, collected payment on Sodexo's behalf, and kept the difference as its collection fee. *See id.*

*Prophet* is distinguishable. There, a federal court interpreted a federal law. And one with specific requirements and specialized definitions. Golden acknowledges as much, but still urges us to follow the Tenth Circuit's analysis and conclude that Sodexo directly sold its meals to the students in retail transactions. But, here we are concerned with municipal tax ordinances, not a federal labor statute.