**Douglas J. ALWARD, Plaintiff–Appellant,**

v.

**Gary GOLDER, Mark Broaduss, Tommy Bullard, Raymond Cole, Jason Zwirn, and Jeff Peterson, Defendants–Appellees.**

No. 05CA0120.

Colorado Court of Appeals, Div. II.

Oct. 5, 2006.

Douglas J. Alward, Pro Se.

John W. Suthers, Attorney General, Alisha M. Burris, Assistant Attorney General, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge HAWTHORNE.

In this case concerning violation of a prison verbal abuse regulation, plaintiff, Douglas J. Alward, appeals the judgment dismissing his complaint against defendants, Gary Golder, Mark Broaduss, Tommy Bullard, Raymond Cole, Jason Zwirn, and Jeff Petersen,

all employees of the Colorado Department of Corrections (DOC). We affirm.

Plaintiff is an inmate in the custody of the DOC. In 2004, he filed an informal grievance alleging that he had been denied the use of microwave ovens as group punishment. In that grievance, he referred to prison officials as "wanna-be Nazis" and asserted that they employed "Gestapo tactics." Inmate also referred to prison officials as "doughnut-eating, coffee swilling buffoons," "der fueher [sic]," "toad[ies]," and "tinpot Nazi pigs." Inmate further stated that the prison officials should "take your thumb out of your butt and do your job."

The responding prison official requested that inmate resubmit his grievance in a "more respectful manner." Instead of refiling an informal grievance, inmate elected to file a Step 1 grievance, and again referred to prison officials in highly derogatory terms. With regard to his use of such language, inmate stated, "[T]here's nothing you can do about it."

Defendant Peterson reviewed and denied inmate's Step 1 grievance based on the use of abusive language. However, he informed inmate that he could resubmit it using more appropriate language. Inmate refused to do so and filed a Step 2 grievance, which contained similar language.

Thereafter, defendant Peterson issued a notice of charge against inmate for verbal abuse, a Class II Rule 27 violation of the DOC Code of Penal Discipline (COPD), DOC Admin. Reg. 15001 (Sept. 1, 2003).

At his disciplinary hearing, inmate argued that the charge violated his constitutional right to seek redress from the courts. The hearing officer, in his written order, noted that there was a general reluctance to find a violation of the COPD because of the language used in a grievance. Nevertheless, the hearing officer noted that "[inmate] is clearly capable of expressing himself in a non-abusive manner" and found him guilty of the charged offense. Inmate's conviction was upheld on administrative appeal.

Inmate then brought this C.R.C.P. 106(a)(4) action in district court. He asserted that the prison disciplinary action effectively punished him for exercising his First Amendment right to petition the government for redress of his grievance; that the hearing officer improperly granted multiple continuances without placing the reason for the continuances on the record; that the hearing officer improperly discussed the case with the DOC Legal Affairs Office; that the DOC failed to investigate the case; that the hearing officer's decision was not supported by the record; and that Officers Cole and Peterson failed to attend or make themselves available at the hearing.

The district court found that the hearing officer's decision was supported by the record, that inmate's First Amendment right to petition for the redress of his grievances was not denied, and that the DOC did not commit any procedural errors in connection with his hearing. Accordingly, the district court affirmed the disciplinary conviction.

## I. First Amendment Claim

■ Inmate contends that the DOC violated his First Amendment right to petition the government for redress of grievances by punishing him for the statements he made in his grievance. We disagree.

■ Prisoners have a constitutional right of access to the courts, which, by necessity, includes the right to pursue the administrative remedies that must be exhausted before a prisoner can seek relief in court. *DeWalt v. Carter,* 224 F.3d 607 (7th Cir. 2000); *Hale v. Scott,* 252 F.Supp.2d 728 (C.D.Ill.2003), *aff'd,* 371 F.3d 917 (7th Cir. 2004). Additionally, a prisoner retains those First Amendment rights that are not inconsistent with his or her status as a prisoner or with the legitimate penological objectives of the corrections system. *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Nevertheless, restrictions on the First Amendment rights of a prisoner are constitutional if they are reasonably related to legitimate penological interests. *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). However, there must be more than a formalistic logical connection between a regulation and a penological objective. *Beard v. Banks,*

—— U.S. ——, ——, 126 S.Ct. 2572, 2581, 165 L.Ed.2d 697 (2006).

The Supreme Court has identified four factors to consider in determining the reasonableness of a prison rule: (1) whether there is a " 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives," that is, whether the rule at issue is an " 'exaggerated response' to prison concerns." *Turner v. Safley, supra,* 482 U.S. at 89–90, 107 S.Ct. at 2261–62 (quoting *Block v. Rutherford,* 468 U.S. 576, 586, 104 S.Ct. 3227, 3232, 82 L.Ed.2d 438 (1984)).

Inmate relies on the Ninth Circuit's opinion in *Bradley v. Hall,* 64 F.3d 1276 (9th Cir.1995), to support his contention that his First Amendment rights were violated by defendants' actions. In *Bradley,* an inmate was disciplined for violating the prison's disrespect rules for making the following statement in his grievance:

"[The guard's] actions shows her misuse of her authority and her psychological disorder needs attention. Then you wonder why things happen like that guard getting beat down? I suggest you talk to this woman and have her act professionally instead of like a child." *Bradley v. Hall, supra,* 64 F.3d at 1278.

The inmate in *Bradley* brought a civil rights action challenging the validity of the disrespect rules as applied to the statement he made in his grievance. He asserted that his fear of discipline impermissibly burdened his constitutional right of access to the courts and his right to petition the government for redress of his grievances.

The *Bradley* court concluded that (1) the legitimate penological interests that rules serve could be accommodated without burdening a prisoner's fundamental right of access to the courts; (2) the application of the disrespect rule to the content of the inmate's written grievance represented an "exaggerated response" under *Turner v. Safley, supra;* and (3) the disrespect rule was facially valid, but invalid as applied to the inmate's written grievance. The court held that prison officials may not punish an inmate merely for using "hostile, sexual, abusive or threatening" language in a written grievance. *Bradley v. Hall, supra,* 64 F.3d at 1281–82.

In *In re Parmelee,* 115 Wash.App. 273, 63 P.3d 800 (2003), the court distinguished *Bradley v. Hall, supra,* and held that prison officials did not unreasonably sanction an inmate for violating the facility's insolence rule. The inmate there had referred to a correctional officer in a negative and threatening manner in a written grievance. The court observed that the purpose of the grievance procedure was to bring issues to the attention of prison officials, and concluded that it should not be used as a forum to make disparaging, degrading, and abusive comments about correctional staff.

In *Hale v. Scott, supra,* a federal district court also distinguished *Bradley v. Hall, supra,* and held an inmate's First Amendment rights were not violated because he was disciplined for asserting in a grievance that a female correctional officer was rumored to be having sex with male officers. The court held it was reasonable to discipline the inmate for making such an allegation in his grievance without evidentiary support. *See also Ustrak v. Fairman,* 781 F.2d 573, 580 (7th Cir.1986) (upholding punishment of an inmate for violating a regulation forbidding disrespect or insolence, concluding it was inimical to prison discipline to allow prisoners to abuse guards and each other; inmate described prison officials as "stupid lazy assholes" and challenged them to "bring their fat asses around the gallery at night").

Here, the grievance submitted by inmate contained abusive language that was unnecessary to explain the facts surrounding the subject of the grievance, and the district court found, with ample support in the record, that inmate was clearly capable of expressing himself in a nonabusive manner. We agree.

In his brief filed in this court, inmate asserts that there is no "requirement ex-

pressed in any policy that requires a prisoner to use genteel discourse to accommodate the affected sensibilities of a falsely modest prison guard." Inmate admits that he could have used other words and phrases, but insists that his derogatory statements about the prison guards were "sure to be understood even by a prison guard and convey[ed] necessary information in a succinct manner."

We conclude that (1) the DOC regulation precluding verbal abuse by an inmate has a valid, rational connection to the state's legitimate governmental interest in the safe and efficient operation of its prison system; (2) inmate could have filed a grievance without using the offensive language, and the language he chose was not relevant to the subject matter of the grievance even though he was given two opportunities to refile his grievance without using the offending language; (3) if the use of unnecessary offensive language was not subject to discipline, the grievance process would be a forum where inmates could harass and abuse prison officials without consequence; and (4) inmate has not proposed a ready alternative to the verbal abuse rule, and the rule is not an exaggerated response to prison concerns. Thus, there is more than a formalistic logical connection between the DOC's regulation and a legitimate penological interest. *See Beard v. Banks, supra.*

Inmate's right to access the courts was not threatened by defendants' request that he use nonabusive language in his grievance, and we conclude his First Amendment rights were not violated by defendants' actions in disciplining him for using offensive language in his grievance.

## II. Evidence

■ To the extent inmate also contends that there was insufficient evidence to support his disciplinary conviction, we disagree. The grievances he submitted are sufficient to establish that he engaged in verbal abuse in violation of the COPD. *See Kodama v. Johnson,* 786 P.2d 417, 420 (Colo.1990) (prison official's decision must be upheld if there is "some evidence" in the record to support it); *see also* COPD § IV(D), Class II, Rule 27.

## III. Procedural Violations

Inmate next contends the disciplinary action must be reversed because the DOC officials failed to follow their own procedures. We are not persuaded.

■ In a C.R.C.P. 106(a)(4) proceeding, review is limited to whether the governmental body's decision was an abuse of discretion or was made without jurisdiction, based on the evidence in the record before that body. C.R.C.P. 106(a)(4)(I); *Verrier v. Colo. Dep't of Corr.,* 77 P.3d 875 (Colo.App.2003). A misinterpretation or misapplication of governing law by an agency is an alternative ground for finding an abuse of discretion under C.R.C.P. 106(a)(4). *See Save Park County v. Bd. of County Comm'rs,* 990 P.2d 35 (Colo.1999).

■ Because an appellate court sits in the same position as the district court when reviewing an agency's decision under C.R.C.P. 106(a)(4), appellate review of the district court's decision is de novo. *Thomas v. Colo. Dep't of Corr.,* 117 P.3d 7 (Colo.App.2004).

### A. Investigation

■ Inmate asserts that the reviewing supervisor failed to investigate the DOC's case as required by the COPD. We disagree.

The applicable COPD regulation provides that "[i]f a Class I or Class II charge(s) is brought against an offender, an appropriate supervisor(s) must conduct an independent review, as soon as possible, but no later than two working days after the date of discovery of the alleged violation." COPD § IV(E)(3)(a)(1). The COPD regulations also provide:

> The supervisory review may be delegated to a staff member at or above the level of Correctional Officer III or the equivalent. The reviewing supervisor may consult with anyone including the offender during his review. If the reviewing supervisor finds cause to believe that any violation was committed by the offender charged, he shall approve the Notice of Charge(s).

COPD § IV(E)(3)(a)(2).

Here, the record demonstrates that (1) the reviewing supervisor, defendant Cole, re-

viewed the charges and found that inmate's actions may have violated the COPD provision that prohibits verbal abuse; (2) Cole relied upon the incident report that was supplied by Petersen, the initiating employee; and (3) Cole attributed to inmate a statement that he (inmate) would name Cole in a lawsuit if Cole followed up with the charges. Although Cole did not complete each item on the investigation form, the regulations only require that the reviewing supervisor conduct an independent review. That was done here.

Because the record demonstrates that the proper official conducted the necessary investigation, we reject inmate's argument that the DOC failed to follow its own regulation with regard to the investigation of the charge brought against him.

### B. Presence of Supervising or Initiating Employee

■ We also reject inmate's contention that his disciplinary conviction must be reversed because neither the supervisory employee nor the initiating officer was present at the hearing.

The COPD defines "disciplinary officer" as: "A person, or persons, designated by the warden ... whose duty it shall be to present the DOC's case at disciplinary proceedings. Where feasible, this person shall be at or above the level of Correctional Officer III or the equivalent." COPD § III(G).

The COPD also provides that "[t]he supervisory review may be delegated to a staff member at or above the level of Correctional Officer III or the equivalent." COPD § IV(E)(3)(a).

The prison facility in which inmate was confined adopted these regulations and also enacted certain local amendments, one of which provides that the "reviewing supervisor/ disciplinary officer will be at the level of Correctional Officer III or above." Another amendment provides that the "reviewing/ disciplinary officer will complete the investigation of the alleged rule violations without delay." A third amendment provides that "Class I and Class II COPD offenses will be presented by the reviewing/ disciplinary officer who investigated the report[;] if unavailable, the initiating employee will be available at the hearing."

Inmate argues that the local amendments require the presence of the supervising or initiating employee at the disciplinary hearing, and that because neither official was present, his disciplinary conviction must be reversed. We are not persuaded.

■ In construing an administrative rule or regulation, we apply the same rules of construction as we would in interpreting a statute. *See Lucero v. Dep't of Insts.*, 942 P.2d 1246 (Colo.App.1996). If the meaning is unclear, the courts generally defer to the agency's interpretation of its regulations. *See Powell v. Colo. Pub. Utils. Comm'n*, 956 P.2d 608 (Colo.1998); *see also Timberline Sawmill & Lumber Inc. v. Indus. Comm'n*, 624 P.2d 367 (Colo.App.1981)(an agency's interpretation of its own regulation will not be reversed on appeal unless it is so inconsistent with the regulation as to be plainly erroneous).

Even if we assume that inmate's interpretation of the local amendments is correct, he has failed to show he was prejudiced by the DOC's failure to have the "reviewing/ disciplinary officer" or the initiating officer present at the hearing. Nor did inmate request that either employee be called as a witness at his hearing or request their presence for that purpose.

Therefore, we conclude inmate has failed to show prejudice as a result of any alleged violation of the prison facility rules, and we reject his contention. *See Chesson v. Jaquez*, 986 F.2d 363 (10th Cir.1993) (inmate failed to show how the testimony of an officer and the admission of certain evidence would have affected the outcome of the case).

### C. Continuance

■ Inmate also contends the hearing officer violated the COPD because he did not show "good cause" for continuing the hearing multiple times. We disagree.

The hearing officer may grant a continuance for a reasonable period of time for good cause. *See* COPD § IV(E)(3)(*l*)(1).

The hearing officer continued the hearing several times. He initially did so to research inmate's First Amendment claim, and each continuance was documented on a form prepared by the hearing officer.

We conclude that the written documentation completed by the hearing officer was sufficient to comply with the requirements of the rule. Also, inmate does not explain how he was prejudiced by the continuances. *See Chesson v. Jaquez, supra.* Under such circumstances, we perceive no basis for reversing inmate's disciplinary conviction.

### D. Ex Parte Communications

 Inmate further contends that the hearing officer engaged in improper ex parte communications by contacting the DOC Legal Affairs Office for help in researching inmate's First Amendment claim. We conclude any error was harmless.

Inmate relies on COPD § IV(E)(1)(c), which provides that "[n]o hearing officer or board member shall discuss a case to which he is assigned with any other person, except at the hearing on the matter, or after its conclusion." This rule also provides that the hearing officer may not be directly involved in the incident, but allows the hearing officer to be aware of investigations and information about the incident without being biased.

This rule prevents ex parte communications by the hearing officer with persons interested in or knowledgeable about the incident. Inmate does not assert that the hearing officer improperly obtained additional factual information about the case, and we have reviewed the legal issues de novo. Finally, we note that there is no evidence that the hearing officer was an attorney or that the DOC Legal Affairs Office participated in the hearing.

Therefore, we conclude that the hearing officer's error, if any, in consulting with the DOC Legal Affairs Office was harmless. The judgment is affirmed.

Judge ROTHENBERG and Judge ROY concur.