2014 COA 69

**James R. DAWSON, Jr.,**
**Plaintiff–Appellant,**

**v.**

**EXECUTIVE DIRECTOR OF the COLORADO DEPARTMENT OF CORRECTIONS and Warden of the Colorado Territorial Correctional Facility, Defendants–Appellees.**

**Court of Appeals No. 13CA1023**

Colorado Court of Appeals,
Div. I.

Announced May 22, 2014

James R. Dawson, Jr., Pro Se

John W. Suthers, Attorney General, Jacquelynn N. Rich Fredericks, Assistant Attorney General, Denver, Colorado, for Defendants–Appellees

Opinion by JUDGE DUNN

¶ 1 Appellant James R. Dawson, Jr., an inmate in the custody of the Colorado Department of Corrections (DOC), appeals from the district court's judgment affirming his prison disciplinary conviction under the DOC's Code of Penal Discipline. We affirm.

## I. Background

¶ 2 In September 2012, Dawson was assisting another inmate with a legal matter. On his way back to the living unit, Dawson was carrying the other inmate's legal papers, but was not accompanied by the inmate. As a result, prison officials charged Dawson with unauthorized possession, a Class II violation of the Code of Penal Discipline.

¶ 3 After a hearing, the hearing officer determined that the legal papers became contraband when Dawson possessed them outside the presence of the inmate to whom the papers belonged. The hearing officer therefore found Dawson guilty of unauthorized possession. Dawson's disciplinary conviction was upheld on administrative review.

¶ 4 Dawson challenged his disciplinary conviction in district court under C.R.C.P. 106(a)(4). The district court affirmed the conviction.

## II. Discussion

¶ 5 Dawson contends that the district court erred in affirming his disciplinary conviction because, in his view, his conduct did not violate the Code of Penal Discipline. We disagree.

### A. Standard of Review and Governing Law

¶ 6 Because an appellate court sits in the same position as the district court when reviewing the DOC's disciplinary decision under C.R.C.P. 106(a)(4), our review of the district court's ruling is de novo. *Alward v. Golder,* 148 P.3d 424, 428 (Colo.App.2006); *Thomas v. Colo. Dep't of Corr.,* 117 P.3d 7, 8–9 (Colo.App.2004). Review of a prison disciplinary decision is limited to determining whether prison officials exceeded their jurisdiction or abused their discretion. *See* C.R.C.P. 106(a)(4)(I), 106.5(a); *Thomas,* 117 P.3d at 8.

¶ 7 Prison officials abuse their discretion when they misinterpret or misapply the governing law. *See Alward,* 148 P.3d at 428. Otherwise, a disciplinary decision must be upheld if there is some evidence to support it. *See Kodama v. Johnson,* 786 P.2d 417, 420 (Colo.1990); *see also Phillips v. Exec. Dir., Colo. Dep't of Corr.,* 251 P.3d 1176, 1177 (Colo.App.2010).

¶ 8 We construe administrative rules or regulations in the same manner as statutes. *Alward,* 148 P.3d at 429. We first consider the plain language of the regulation. *Phillips,* 251 P.3d at 1178. If the language of a regulation is clear and unambiguous, we do not apply other rules of construction. *Id.* And when a rule or regulation defines a term, that definition governs. *Woolsey v. Colo. Dep't of Corr.,* 66 P.3d 151, 153 (Colo.App.2002).

### B. Unauthorized Possession

¶ 9 As pertinent here, an offender commits the offense of unauthorized possession when he possesses "any item defined as contraband." Dep't of Corr. Reg. No. 150–01(IV)(D) (Class II Offenses) (19) (2011). "Contraband" is defined as, among other things, "[a]ny item that a[n] ... offender is not specifically authorized to have in his/her

possession." Dep't of Corr. Reg. No. 150–01(III)(C).[1]

¶ 10 While an inmate may possess another inmate's legal documents, he may do so only in the time, place, and manner authorized by the DOC. Specifically, if offenders are preparing or exchanging legal documents outside of the prison law library, "all involved offenders must be present" and offenders must "return all documents to their owner before parting company." Dep't of Corr. Reg. No. 750–01(IV)(E)(1) (2012). The regulation also plainly states that "[v]iolations [of this regulation] may result in [disciplinary] charges." *Id.*

¶ 11 Evidence was presented that Dawson possessed another inmate's legal documents. At the time of possession, Dawson was outside the law library and was not with the inmate to whom the legal papers belonged. Accordingly, the evidence supports the hearing officer's determination that Dawson was guilty of unauthorized possession in violation of the Code of Penal Discipline. *See Washington v. Crowder,* 12 P.3d 857, 860 (Colo. App.2000) (upholding prison disciplinary conviction for "unauthorized possession" based on inmate's possession of "contraband").

¶ 12 To the extent Dawson argues that the hearing officer misinterpreted the Code of Penal Discipline, we disagree. The Code broadly defines contraband as, among other things, "[a]ny item" that an offender "is not specifically authorized to have in his/her possession." Dep't of Corr. Reg. No. 150–01(III)(C). Given the breadth and clarity of this definition, the hearing officer correctly concluded that Dawson was in possession of contraband within the meaning of the Code when he possessed another inmate's legal documents under the circumstances presented here.

¶ 13 Dawson further contends that he was allowed to possess another inmate's legal materials under an exception in the definition of contraband that allows inmates to possess reading materials. Dawson relies upon the second clause of the regulation defining contraband, which excepts reading materials from that clause. *See* Dep't of Corr. Reg. No. 150–01(III)(C) (defining contraband as "any item that has been altered and/or is being used for other than its intended purpose (this does not include reading materials, refer to AR 300–26, *Offender Reading Material* )"). We do not agree that the reading materials exception in this clause permitted Dawson's possession of another inmate's legal papers outside the presence of that inmate for two reasons.

¶ 14 First, on its face, the reading materials exception does not apply to the entire contraband definition. Rather, the exception is parenthetically included only in that discrete portion of the definition that relates to items that have been altered or are being used for a purpose other than their intended purpose. *Id.*

¶ 15 Second, even if we assume that the reading materials exception applies to the entire definition, the specific regulation that outlines the circumstances under which an inmate is authorized to possess another inmate's legal papers applies over the more general regulation governing offender reading materials. *See Woolsey,* 66 P.3d at 154 (specific Code of Penal Discipline definition prevails over general provision).

¶ 16 Because Dawson possessed another inmate's legal papers in a location that required the presence of that inmate, Dawson's possession of the documents without that inmate present constituted unauthorized possession of contraband. *See* Dep't of Corr. Reg. Nos. 150–01(III)(C) (prohibiting

---

1. Contraband is fully defined as:

Any item that a[n] ... offender is not specifically authorized to have in his/her possession; any item that has been altered and/or is being used for other than its intended purpose (this does not include reading materials, refer to AR 300–26, *Offender Reading Material*); any item(s) over the three cubic foot allowable personal property limit; any item listed in the "Consent to Search Authorization"; any item listed in the Code of Penal Discipline; any item listed on the administrative head's "Declaration of Contraband"; and any item that may threaten the safety and security of a DOC facility, DOC employees, contract workers, volunteers, offenders, or visitors, or any item listed as contraband in an administrative regulation, implementation/ adjustment, or operational memorandum.

Dep't of Corr. Reg. No. 150–01(III)(C) (2011).

an inmate from possessing "any item" not specifically authorized) and 750–01(IV)(E)(1) (circumscribing the time, place, and manner under which an inmate may possess another inmate's legal papers).

¶ 17 Still, Dawson argues that his possession of the legal papers was authorized under *Tebbetts v. Whitson*, 956 P.2d 639 (Colo.App. 1997). In that case, a division of this court concluded that the Code of Penal Discipline regulations did not limit an inmate to possession of only his own legal papers. *Id.* at 642. Consequently, the *Tebbetts* division reversed the inmate's disciplinary conviction for unauthorized possession of another inmate's legal papers. *Id.* But that holding was based on the language of the then-applicable Code of Penal Discipline regulations. *See id.* Unlike the regulation at issue here, the regulation addressed in *Tebbetts* did not proscribe the circumstances under which an inmate could possess another inmate's legal documents. And indeed, *Tebbetts* expressly left open the possibility that the Code of Penal Discipline regulations could be amended to restrict an inmate's possession of legal papers. *Id.* (concluding that "there is no question that [Code of Penal Discipline] provisions could limit an inmate to possession of only his or her own legal papers"). *Tebbetts* is therefore inapposite.

¶ 18 Dawson's reliance on *Phillips*, 251 P.3d 1176, is similarly misplaced. In that case, a division of this court reversed a prison disciplinary conviction for "possession of unauthorized legal documents," determining that there was insufficient evidence to establish that the document in that inmate's possession "belonged" to another inmate. *Id.* at 1178–79. The disciplinary offense at issue in *Phillips*, however, is no longer part of the Code of Penal Discipline. Accordingly, *Phillips* does not inform our analysis.

¶ 19 Based upon the evidence presented, the district court properly upheld Dawson's prison disciplinary conviction.

---

III. Conclusion

¶ 20 The judgment is affirmed.

Taubman and Plank *, JJ., concur

§ 24–51–1105, C.R.S.2013.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and