Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
May 28, 2019

**2019 CO 41**

**No. 17SC840, <u>Department of Revenue v. Agilent Technologies</u>—Corporate Income Tax—Taxation of Holding Companies.**

This case principally requires the supreme court to decide two questions. First, the court must determine whether the Colorado Department of Revenue and its Executive Director can require the parent company of a worldwide family of affiliated corporations to include a holding company and wholly owned subsidiary of the parent in its Colorado combined income tax returns for certain tax years at issue. If the answer to that question is no, then court must consider whether the Department may nevertheless allocate the holding company's gross income to the parent in order to avoid abuse and to clearly reflect income.

As to the first question, the court concludes that sections 39-22-303(11)–(12), C.R.S. (2018), do not authorize the Department to require the parent to include its holding company in its combined tax returns for the tax years at issue because that holding company is not an includable C corporation within the meaning of those provisions. As to the second question, the court likewise concludes that the Department may not allocate the holding company's income to the parent under section 39-22-303(6) because (1) that

section has been superseded by section 39-22-303(11) as a vehicle for requiring combined reporting for affiliated C corporations and (2) even if section 39-22-303(6) could apply, on the undisputed facts of this case, no allocation would be necessary to avoid abuse or clearly reflect income.

Accordingly, the court concludes that the district court properly granted summary judgment in the corporate parent's favor and therefore affirms the judgment of the division below.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2019 CO 41

**Supreme Court Case No. 17SC840**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 16CA849

**Petitioners/Cross-Respondents:**

Department of Revenue of the State of Colorado; and Michael Hartman, in his official capacity as the Executive Director of the Department of Revenue of the State of Colorado,

v.

**Respondent/Cross-Petitioner:**

Agilent Technologies, Inc.

**Judgment Affirmed**
*en banc*
May 28, 2019

**Attorneys for Petitioners/Cross-Respondents:**
Philip J. Weiser, Attorney General
Terence C. Gill, First Assistant Attorney General
Noah C. Patterson, Senior Assistant Attorney General
    *Denver, Colorado*

**Attorneys for Respondent/Cross-Petitioner:**
Silverstein & Pomerantz LLP
Neil I. Pomerantz
    *Denver, Colorado*

Morrison & Foerster LLP
Craig B. Fields
Irwin M. Slomka
    *New York, New York*

**Attorneys for Amicus Curiae Council on State Taxation:**
Holland & Hart LLP
Christina F. Gomez
Jonathan S. Bender
*Denver, Colorado*

**Attorney for Amici Curiae Professors David Gamage, Hayes Holderness, and Darien Shanske:**
Isaac L. Lodico
*Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1     This case principally requires us to decide two questions.  First, we must determine whether the Colorado Department of Revenue and Michael Hartman, in his official capacity as the Executive Director of the Department (the "Director" and collectively with the Department, the "Department"), can require Agilent Technologies, Inc. ("Agilent") to include its holding company, Agilent Technologies World Trade, Inc. ("World Trade"), in its Colorado combined income tax returns for the tax years 2000–07.  Second, if the answer to that question is no, then we must consider whether the Department may nevertheless allocate World Trade's gross income to Agilent in order to avoid abuse and to clearly reflect income.[1]

_____

[1] Specifically, we granted certiorari to review the following issues:

1. Whether a holding company that has no foreign property, payroll, or operations is exempt from Colorado taxation under the "Water's Edge" exemption (C.R.S. § 39-22-303(8), (12)(c), 2017).

2. Whether section 39-22-303(6) authorizes the Department to allocate a domestic holding company's income to its corporate parent to "clearly reflect" the parent's income and "avoid abuse."

3. Whether the principles of federal conformity require that the federal "check-the-box" elections made by World Trade's subsidiaries be followed for Colorado income tax purposes, resulting in World Trade being excluded from Agilent's Colorado combined returns under Section 303(8) because, as a result of those elections, more than 80% of World Trade's property and payroll is located outside the United States.

4. Whether World Trade [should] be excluded from Agilent's combined returns because at least three of the six factors required for combination under Section 303(11)(a) are not satisfied.

¶2 As to the first question, we now conclude that sections 39-22-303(11)–(12), C.R.S. (2018), do not authorize the Department to require Agilent to include World Trade in its combined tax returns for the tax years at issue because World Trade is not an includable C corporation within the meaning of those provisions. As to the second question, we likewise conclude that the Department may not allocate World Trade's income to Agilent under section 39-22-303(6) because (1) that section has been superseded by section 39-22-303(11) as a vehicle for requiring combined reporting for affiliated C corporations and (2) even if section 39-22-303(6) could apply, on the undisputed facts presented here, no allocation would be necessary to avoid abuse or clearly reflect income.

¶3 Accordingly, we conclude that the district court properly granted summary judgment in Agilent's favor, and we therefore affirm the judgment of the division below.[2]

## I. Facts and Procedural History

¶4 Agilent is a Delaware corporation headquartered in California, and it is the parent company of a worldwide family of affiliated corporations that develops and manufactures bio-analytic and electro-analytic devices. Agilent maintains research and development and manufacturing sites in Colorado and is thus subject to Colorado corporate income tax.

---

[2] In reaching this conclusion, we acknowledge that toward the end of the recently concluded legislative session, and after we heard oral argument in this case, the General Assembly passed Senate Bill 19-233, which had been introduced the week before our oral argument. If this bill is eventually signed by the Governor, it would amend section 39-22-303 to enact into law the interpretation of that statute that the Department has asked us to read into the current statute. Because this bill, if enacted, would not become effective until August 2, 2019, and because its text makes clear that the amendments change prior law, the bill has no bearing on our analysis here.

4

¶5 World Trade is a Delaware corporation and a wholly owned subsidiary of Agilent. During the time period at issue, World Trade did not own any real or tangible personal property and did not have any employees or payroll of its own. Rather, World Trade served as a holding company, and, as pertinent here, it owned the stock of four foreign subsidiaries that operated exclusively outside of the United States. World Trade earned substantial dividends on its shares in the above-noted subsidiaries, and it is the tax treatment of these dividends that has given rise to the dispute that is now before us.

¶6 For the tax periods beginning June 3, 2000, and ending October 31, 2007, Agilent filed separate company Colorado corporate income tax returns and did not include World Trade in its Colorado corporate tax returns for those periods, notwithstanding the fact that, for federal income tax purposes, each of the above-noted foreign subsidiaries of World Trade made so-called "check-the-box" elections to be treated as disregarded entities (and therefore as divisions of World Trade) for federal income tax purposes.

¶7 The Department subsequently audited Agilent's corporate tax returns and in August 2010 issued notices of tax deficiencies for the periods at issue. As pertinent here, these notices required Agilent to file Colorado combined corporate income tax returns for the periods at issue and to include World Trade in those returns. These notices also advised Agilent that the Department had assessed tax, interest, and penalties against it totaling $13,345,601.

¶8 Agilent protested this assessment, but the Director upheld it, and in 2014, the Department issued a "Notice of Final Determination and Assessment and Demand for Payment," which included additional interest and brought the assessment to $13,720,507.

5

¶9     Agilent then filed a proceeding in the Denver district court challenging the Department's determination. The parties subsequently cross-moved for summary judgment, and the court ultimately granted summary judgment in favor of Agilent and against the Department.

¶10    As pertinent here, the court rejected Agilent's contentions that (1) the Department was required to respect the foreign subsidiaries' check-the-box elections and similarly treat World Trade and the four subsidiaries as a single C corporation for Colorado income tax purposes and, therefore, (2) more than 80% of World Trade's property and payroll fell outside of the United States, thus precluding the Department, under section 39-22-303(8), from requiring World Trade's inclusion in Agilent's combined return. The court further rejected Agilent's contention that World Trade did not satisfy at least three of the six factors set forth in section 39-22-303(11)(a), as required to mandate inclusion in a Colorado combined return.

¶11    The court proceeded to determine, however, that World Trade did not meet the definition of an includable C corporation for purposes of section 39-22-303(12)(c). The court based this conclusion on the facts that (1) World Trade was a holding company with no property or payroll of its own in the United States and (2) the Department's own regulation, Colo. Code Regs. section 201-2:39-22-303.12(c) (2019), provided that such a corporation could not be included in a combined return. The court further rejected the Department's alternative argument that the inclusion of World Trade's income in Agilent's combined return was warranted under section 39-22-303(6). In reaching this conclusion, the court again turned to the Department's regulations, this time Colo. Code

6

Regs. section 201-2:39-22-303.6 (2019), which provides, in substance, that section 39-22-303(6) is not a vehicle for combining income of affiliated corporations and cannot be used to circumvent the combined reporting requirements set forth in sections 39-22-303(8)–(12).

¶12     The Department appealed, Agilent cross-appealed, and in a unanimous, published opinion, a division of the court of appeals affirmed. *Agilent Techs., Inc. v. Dep't of Revenue*, 2017 COA 137, __ P.3d __. As pertinent here, the division agreed with the district court that the foreign subsidiaries' check-the-box elections did not preclude the Department from requiring World Trade's inclusion in Agilent's Colorado combined returns. *Id.* at ¶¶ 27–31. Like the district court, however, the division further concluded that World Trade, as an entity without property or payroll of its own in the United States, was not an "includable C corporation" under section 39-22-303(12)(c) and the applicable regulation. *Id.* at ¶¶ 18–26. And the division concluded that section 39-22-303(6) did not provide the Department with an alternative basis for taxing World Trade's income because, on the undisputed facts presented, Agilent's formation of World Trade did not constitute "abuse" within the meaning of that provision. *Id.* at ¶¶ 33–38. In light of these determinations, the division affirmed the district court's judgment and declined to reach Agilent's contention that that court had erred in holding that World Trade satisfied at least three of the six factors set forth in section 39-22-303(11)(a). *Id.* at ¶¶ 44–46.

¶13     The Department petitioned this court for certiorari review, and Agilent cross-petitioned, requesting that we review those of its arguments that the division had rejected. We granted both parties' petitions.

## II. Analysis

¶14    The Department principally contends that under sections 39-22-303(11)–(12), the Department can require Agilent to include World Trade in its Colorado combined tax returns. The Department further contends that even if it may not do so under those provisions, pursuant to section 39-22-303(6), it may nevertheless allocate World Trade's gross income to Agilent in order to avoid abuse and to clearly reflect income. We begin by setting forth our standard of review and the pertinent principles of statutory construction. We then address the Department's various statutory and policy arguments, and we reject each of those arguments in turn. As a result, we need not consider the two issues that Agilent raised in its cross-petition.

### A. Standard of Review and Principles of Statutory Construction

¶15    This case requires us to review the district court's entry of summary judgment in Agilent's favor. We review a grant of summary judgment de novo. *Hardegger v. Clark*, 2017 CO 96, ¶ 13, 403 P.3d 176, 180. When, as here, the material facts are undisputed, summary judgment is proper only when the pleadings and supporting documents show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.*; C.R.C.P. 56(c). In considering whether summary judgment is proper, a court grants the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts and resolves all doubts against the moving party. *Hardegger*, ¶ 13, 403 P.3d at 180. In responding to a properly supported summary judgment motion, however, the nonmoving party may not

rest on mere allegations or demands in its pleadings but rather must provide specific facts demonstrating a genuine issue for trial. *Id.*

¶16 We also review questions of statutory interpretation de novo. *UMB Bank, N.A. v. Landmark Towers Ass'n*, 2017 CO 107, ¶ 22, 408 P.3d 836, 840. In construing a statute, our goal is to effectuate the legislature's intent. *Oakwood Holdings, LLC v. Mortg. Invs. Enter. LLC*, 2018 CO 12, ¶ 12, 410 P.3d 1249, 1252. In seeking to do so, "we look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we apply words and phrases in accordance with their plain and ordinary meanings." *UMB Bank,* ¶ 22, 408 P.3d at 840. We must avoid constructions that would render any words or phrases superfluous or that would lead to illogical or absurd results. *Am. Fam. Mut. Ins. Co. v. Barriga*, 2018 CO 42, ¶ 8, 418 P.3d 1181, 1183. In addition, we must respect the legislature's choice of language, and we will not add words to a statute or subtract words from it. *Oakwood Holdings*, ¶ 12, 410 P.3d at 1252. If the statutory language is clear, we apply it as written and need not resort to other rules of statutory construction. *Id.* In addition, we may consider an agency's interpretation of a statute, but we are not bound by the agency's interpretation, and we will not defer to that interpretation if it is contrary to the statute's plain language. *BP Am. Prod. Co. v. Colo. Dep't of Revenue*, 2016 CO 23, ¶ 15, 369 P.3d 281, 285.

## B. Sections 39-22-303(11)–(12)

¶17 Section 39-22-303(11)(a) delineates what has come to be known as the "three-of-six test":

9

In the case of an *affiliated group* of C corporations, the executive director may require, or the taxpayer may file, a combined report, but such report shall only include those members of an affiliated group of C corporations as to which any three of [a list of six enumerated] facts have been in existence in the tax year and the two preceding tax years[.]

(Emphasis added.)

¶18     Section 39-22-303(12)(a) defines "affiliated group" to mean "one or more *chains of includable C corporations* connected through stock ownership with a common parent C corporation which is an includable C corporation if [certain stock ownership requirements are satisfied]."  (Emphasis added.)

¶19     And section 39-22-303(12)(c), in turn, defines "includable C corporations" as "any C corporation which has more than twenty percent of the C corporation's property and payroll as determined by factoring pursuant to section 24-60-1301, C.R.S., assigned to locations inside the United States."[3]

¶20     Read together, these provisions allow the Director to require a Colorado combined return of "an affiliated group of C corporations," and in such circumstances, chains of includable corporations that meet the three-of-six test must be included in the combined return.

¶21     The first question that we must decide, then, is whether World Trade is an includable C corporation such that, subject to satisfaction of the three-of-six test, the

---

[3] Section 24-60-1301, art. IV, C.R.S. (2018), sets forth certain factoring formulas for apportioning business income.  The property factor is a fraction, the numerator of which is the average value of the taxpayer's real and tangible personal property owned or rented and used in Colorado during the pertinent tax period and the denominator of which is the average value of all of the taxpayer's real and tangible personal property owned or rented and used during the tax period.  § 24-60-1301, art. IV, § 10.

10

Director may require that any chain of which it is a part be included in a combined return. We conclude that it is not such a corporation.

¶22     As noted above, an includable C corporation is a C corporation that has more than twenty percent of its property and payroll as determined by factoring pursuant to section 24-60-1301 assigned to locations inside the United States.

¶23     Here, World Trade has no property or payroll as determined by the requisite factoring inside the United States. Accordingly, World Trade is not part of a chain of includable corporations, whether or not it meets the three-of-six test, and therefore the director may not require that it be included in Agilent's combined return under 39-22-303(11)(a).

¶24     Our conclusion in this regard is supported by Colo. Code Regs. section 201-2:39-22-303.12(c), entitled "Corporations without property and payroll factors," which the Department promulgated in 1994. That regulation provides, in pertinent part, "Since corporations that have no property or payroll factors of their own cannot have twenty percent or more of their factors assigned to locations in the United States, such corporations, by definition, cannot be included in a combined report." In our view, this regulation is directly on point because it unambiguously provides that if a corporation has no property or payroll of its own, then it may not be included in a combined return. World Trade does not have any property or payroll of its own. Accordingly, the regulation prohibits the inclusion of World Trade in Agilent's return. *See Rags Over the Ark. River, Inc. v. Colo. Parks & Wildlife Bd.*, 2015 COA 11M, ¶ 25, 360 P.3d 186, 191 (noting that an administrative agency is bound by the regulations that it enacts).

11

¶25 In so concluding, we are unpersuaded by the Department's assertion that the aforementioned regulation is inapplicable because it was intended to apply solely to foreign sales corporations. The regulation does not express any such limitation, and when the language of a regulation is clear and unambiguous, we must apply it as written. *See Dawson v. Exec. Dir. of Colo. Dep't of Corrs.*, 2014 COA 69, ¶ 8, 345 P.3d 969, 970 (noting that courts construe administrative rules and regulations in the same manner as statutes and that when the language of a regulation is clear and unambiguous, courts do not resort to rules of construction).

¶26 Moreover, we deem as significant the fact that when the Department adopted a regulation that mirrored the argument that it is making before us, the legislature rejected the Department's position. Specifically, in 1990, the Department promulgated a prior version of Colo. Code Regs. section 201-2:39-22-303.12(c) (1990), that provided, in pertinent part, "A corporation without property and payroll, which functions through the use of personnel services and/or property of an includible corporation, shall also be considered an includible corporation." The Office of Legislative Legal Services ("OLLS"), however, reviewed this regulation and determined that it

> conflict[ed] with the definition of "includible corporations" as set forth in section 39-22-303(12)(c), C.R.S. The regulation[] allow[ed] corporations with no property or personnel to be considered includible corporations even though such corporations [did] not satisfy the statutory requirements of having more than twenty percent of its property and payroll located within the United States.

12

Memorandum from Sharon L. Eubanks, OLLS, to the General Assembly's Committee on Legal Services 2 (Nov. 7, 1990). The General Assembly accepted the OLLS's conclusion and voted against extending the regulation, thus allowing it to expire on June 1, 1991.

¶27 Notwithstanding the foregoing, the Department contends, based on its view of the available legislative history, that section 39-22-303(11) was never intended to apply to wholly domestic corporations. Regardless of what the Department believes the legislature may or must have intended, however, in our view, the statutory language and the Department's regulations are clear and unambiguous, and we must therefore follow them without the need to resort to other tools of statutory construction. *See, e.g.*, *Oakwood Holdings*, ¶ 12, 410 P.3d at 1252 (noting that if the statutory language is clear, then the court must apply it as written and need not resort to other rules of statutory construction); *UMB Bank*, ¶ 22, 408 P.3d at 840 (explaining that, in construing a statute "we apply words and phrases in accordance with their plain and ordinary meanings").

¶28 We likewise are unpersuaded by the Department's assertion that section 39-22-303(12)(a) applies and requires the inclusion of World Trade in Agilent's Colorado combined returns because World Trade, in fact, had domestic property (because it used tangible property of Agilent, including computers, printers, and other equipment). As noted above, a corporation's property and payroll are determined under factoring formulas for apportioning business income, including a formula for apportioning the property factor. Like the division below, however, *Dep't of Revenue*, ¶ 25, we conclude that the record does not show how, if at all, World Trade came to use this property.

13

Accordingly, we discern no error in the district court's determination that World Trade had no property factors.

¶29    For these reasons, we conclude that sections 39-22-303(11)–(12) do not authorize the Department to require Agilent to file a combined report that includes World Trade, and we need not consider whether World Trade may also be excluded under the test set forth in section 39-22-303(8).  We thus proceed to consider the Department's alternative argument under section 39-22-303(6).

## C.  Section 39-22-303(6)

¶30    As noted above, the Department alternatively argues that under section 39-22-303(6), it may allocate World Trade's income to Agilent to avoid abuse and to clearly reflect income.  Again, we are not persuaded.

¶31    As an initial matter, we note that the Department's own regulations again undermine its argument.  Specifically, Colo. Code Regs. section 201-2:39-22-303.6 provides, "Even though subsection 39-22-303(6), C.R.S. has been superseded by subsection 39-22-303(11), C.R.S., as a vehicle for requiring combined reporting for affiliated C corporations, subsection 39-22-303(6) is still available for use by the Department of Revenue or by the taxpayer for determining Colorado taxable income by use of [described methodologies]."

¶32    Accordingly, although section 39-22-303(6) retains some vitality, section 39-22-303(11), not section 39-22-303(6), is the provision that determines when combined reporting may be required.  To conclude otherwise would render section 39-22-303(11) meaningless because the Department could always override the result dictated by the

14

objective tests set forth therein merely by making a subjective determination that such an override is necessary to avoid abuse and to clearly reflect income. We cannot countenance such a result. *See Am. Fam. Mut. Ins. Co.*, ¶ 8, 418 P.3d at 1183 (requiring that we avoid constructions that would render any words or phrases superfluous or that would lead to illogical or absurd results).

¶33 Even if section 39-22-303(6) could apply, however, we conclude that it is inapplicable on the undisputed facts now before us.

¶34 Section 39-22-303(6) provides:

> In the case of two or more C corporations, whether domestic or foreign, owned or controlled directly or indirectly by the same interests, the executive director may, to avoid abuse, on a fair and impartial basis, distribute or allocate the gross income and deductions between or among such C corporations in order to clearly reflect income.

¶35 By its plain terms, this provision allows the Director to distribute or allocate income only if doing so is necessary to avoid abuse *and* to clearly reflect income.

¶36 Although the phrase "to avoid abuse" is not defined, the Department contends that in the tax context, "abuse" is a broad concept and exists whenever a taxpayer reduces its tax liability by ordering its affairs so as to comply with the text of the statute while contradicting the statute's intent. The Department further contends that "[s]ubsection (6) does not require the taxpayer itself to engage in abuse, but empowers *the Department* 'to avoid abuse' generally." In the Department's view, then, a corporate structure may constitute abuse even if that structure serves a legitimate business purpose. We are not persuaded.

15

¶37     Here, the Department's own evidence showed that Agilent formed World Trade for legitimate non-tax-related purposes and that Agilent's doing so did not constitute abuse. For example, Sarah Roberts, an expert designated by the Department, testified that she had no evidence that World Trade was not set up for legitimate business purposes. Similarly, when asked if World Trade was a sham, Benjamin F. Miller, another expert designated by the Department, testified, "It's not a sham. It is certainly a normal and traditional way to do things to isolate ownership interest."

¶38     Thus, the Department's own evidence precludes a finding that an allocation of income to Agilent is necessary to avoid abuse.

¶39     Finally, even were we to accept the Department's broad definition of "abuse," no evidence presented in this case supports the Department's suggestion that Agilent and World Trade ordered their affairs so as to comply with the text of the pertinent statutes while contradicting the legislative intent behind those statutes. To the contrary, we perceive the *Department's* construction of the statutes and regulations at issue to be inconsistent with the clear and unambiguous language of those provisions, and for the reasons set forth above, we cannot adopt such a construction. *See Am. Fam. Mut. Ins. Co.*, ¶ 8, 418 P.3d at 1183.

¶40     Accordingly, we conclude that section 39-22-303(6) does not provide the Department with an alternative method of requiring Agilent to file a combined report that includes World Trade.

### D. The Department's Policy Arguments

¶41 Notwithstanding the plain language of the pertinent statutes and of its own regulations, the Department contends that construing the provisions at issue as we have done will lead to absurd results and a parade of horribles because a taxpayer could always shield income from Colorado taxation simply by creating a holding company. For several reasons, we are not persuaded.

¶42 First, to the extent that the Department disagrees with the plain language of the pertinent statutes, its remedy is with the legislature and not this court because we must apply statutory language as written. *Oakwood Holdings*, ¶ 12, 410 P.3d at 1252.

¶43 Second, as the Department's own expert witness recognized, the formation of a holding company is a "normal and traditional way to do things," and we therefore do not agree with the Department's apparent premise that the creation of a holding company, in and of itself and with no evidence that the company was created to avoid Colorado taxation, constitutes "abuse" within the meaning of the pertinent provision.

¶44 Third, although the Department posits that a parade of horribles will follow the statutory interpretation that we have adopted today, it has offered no evidence to support such dire predictions, and we have seen none.

¶45 Accordingly, we conclude, on the undisputed facts of this case, that sections 39-22-303(11)–(12) do not authorize the Department to require Agilent to include World Trade in its Colorado combined returns for the tax years at issue and that section 39-22-303(6) does not afford the Department an alternative means of allocating World Trade's income to Agilent.

17

## E. Other Issues

¶46 For the foregoing reasons, we conclude that the district court properly granted summary judgment in favor of Agilent and against the Department, and we need not address the issues concerning World Trade's check-the-box election and the three-of-six test that Agilent raised in its cross-petition.

## III. Conclusion

¶47 Because the plain and unambiguous language of the pertinent statutory provisions and associated regulations demonstrate that the Department may not compel Agilent to include World Trade in its combined return or otherwise to include World Trade's income in that return, we conclude that the district court properly granted summary judgment in Agilent's favor and against the Department.

¶48 Accordingly, we affirm the judgment of the division below.