JUSTICE GABRIEL delivered the Opinion of the Court.
*1022 ¶1 This case, like Department of Revenue v. Agilent Technologies, Inc. , 2019 CO 41, 441 P.3d 1012, which we are also announcing today, principally requires us to decide two questions. First, we must determine whether the Colorado Department of Revenue and Michael Hartman, in his official capacity as the Executive Director of the Department (the "Director" and collectively with the Department, the "Department"), can require Oracle Corporation ("Oracle") to include its holding company, Oracle Japan Holding, Inc. ("OJH"), in its Colorado combined income tax return for the tax year ending May 31, 2000. Second, if the answer to that question is no, then we must consider whether the Department may nevertheless allocate OJH's gain from the sale of shares that it held in Oracle Corporation Japan ("Oracle Japan") to Oracle in order to avoid abuse and to clearly reflect income.[1]
¶2 For the reasons set forth in Agilent Technologies , we conclude that the pertinent statutory provisions and regulations do not permit the Department either to require Oracle to include OJH in its combined tax return for the tax year at issue or to allocate OJH's capital gains income to Oracle. Accordingly, we conclude that the district court properly granted summary judgment in Oracle's favor, and we therefore affirm the judgment of the division below.[2]
I. Facts and Procedural History
¶3 Oracle is a Delaware corporation headquartered in California, and it is the parent of a worldwide group of affiliated corporations.
¶4 OJH is a Delaware corporation and a wholly-owned subsidiary of Oracle. Oracle formed OJH in 1991, pursuant to the terms of a loan secured by Oracle from Nippon Steel, an unaffiliated Japanese entity. During the time period at issue, OJH owned no real or tangible personal property, had no payroll, and conducted no activities of any kind in Colorado. Rather, it existed solely as a holding company.
¶5 As pertinent here, during the period at issue, OJH held stock in Oracle Japan, and in April 2000, it sold 8.7 million shares of that stock on the Tokyo Stock Exchange, realizing capital gains of approximately $ 6.4 billion. The tax treatment of these gains is at the center of the dispute now before us.
¶6 Oracle filed a Colorado combined return for the tax year at issue, but it did not include OJH in this return. Thereafter, the Department conducted an audit of Oracle's tax returns for periods including the period involved here and issued an assessment that Oracle owed Colorado income tax based on the OJH gain.
¶7 Oracle protested this assessment, but the Department upheld it and issued a final notice and assessment. Oracle then petitioned the district court for relief, the parties subsequently filed cross-motions for summary judgment, and the district court ultimately granted summary judgment in favor of Oracle and against the Department.
*1023 ¶8 In so ruling, the court first found that the Department's own regulation, Colo. Code Regs. section 201-2:39-22-303.12(c) (2019), made clear that corporations that have no property or payroll of their own cannot have twenty percent or more of their factors in the United States, as required for inclusion by sections 3-22-303(11)-(12), C.R.S. (2018), and therefore the Department could not require Oracle to include OJH in its Colorado combined return.
¶9 The court then proceeded to address the Department's alternative argument that OJH, in fact, had property in the United States because it had to have used Oracle's property to fulfill its corporate formalities and this property should be considered in determining whether OJH was an includable C corporation within the meaning of the pertinent statutes. The court rejected this argument based both on the above-noted regulation and on the fact that the Department "has made an insufficient showing on this issue." Specifically, the court concluded that "OJH's theoretical use of Oracle's property does not create a disputed issue of fact with respect to the [pertinent] calculation [of OJH's real and tangible personal property]."
¶10 Last, the court considered and rejected the Department's contention that even if OJH is not an includable C corporation under the pertinent statutes, section 39-22-303(6) nonetheless authorized the Department to require Oracle to include OJH's gain in its income in order to avoid abuse or clearly reflect income. In support of its conclusion, the court found that the Department's argument was contrary to its own regulation, Colo. Code Regs. section 201-2:39-22-303.6 (2019), which provides, in substance, that section 39-22-303(11) superseded section 39-22-303(6) as a vehicle for requiring combined reporting for affiliated C corporations. Thus, the Department could not use section 39-22-303(6) as an alternative method to include OJH in Oracle's combined return. The court further found that the purpose of section 39-22-303(6) is to address abuse leading to tax avoidance, and even if that provision could apply here, nothing in the record suggested any such abuse. The court thus observed:
There is nothing in the record to indicate that Oracle's formation of OJH was an attempt to avoid paying state income taxes on the sale of Oracle Japan stock. To the contrary, OJH was formed pursuant to the terms of a loan secured by Oracle from Nippon Steel, an unaffiliated Japanese entity. Since its formation in 1991, OJH held stock in Oracle Japan before selling a portion of its shares in 2000 and realizing the gain at issue here. Even if the statute had not been superseded, there is no evidence of abuse to warrant the Department transferring OJH's income to Oracle.
¶11 The Department appealed, and, in a split, published opinion, a division of the court of appeals affirmed the district court's judgment. Oracle Corp. v. Dep't of Revenue , 2017 COA 152, --- P.3d ----.
¶12 As pertinent here, the division unanimously concluded that on the undisputed facts of this case, OJH was not an includable C corporation within the plain meaning of section 39-22-303(12)(c) and therefore sections 39-22-303(11) - (12) did not authorize the Department to require Oracle to include OJH in its combined Colorado tax return. Id. at ¶¶ 16-44 ; accord id. at ¶ 71 n.1 (Berger, J., dissenting). This conclusion, the division reasoned, was supported by the Department's own regulation, Colo. Code Regs. section 201-2:39-22-303.12(c), which provides, in part, "Since corporations that have no property or payroll factors of their own cannot have twenty percent or more of their factors assigned to locations in the United States, such corporations, by definition, cannot be included in a combined report." Oracle Corp. , ¶ 24.
¶13 Having concluded that OJH is not an includable C corporation under section 39-22-303(12)(c), the division proceeded to consider the Department's argument that section 39-22-303(6) could be applied as an alternative basis for including income of OJH in Oracle's tax return. Id. at ¶¶ 47-55. On this issue, the division split.
¶14 The majority rejected the Department's contentions, agreeing with the district court's above-quoted ruling both legally and factually. Id. at ¶ 49. The majority thus observed:
On the one hand, the record supports the district court's analysis that Oracle formed OJH for a reasonable business purpose, at *1024 the behest of an independent third party. On the other hand, the Department does not cite any evidence of corruption, impropriety, or deceit in Oracle's use of OJH. The Department's assertions that "Oracle treats Oracle Japan as a direct subsidiary," OJH "is merely a vehicle for Oracle's ownership of Oracle Japan," and a loan of the OJH Gain to another Oracle subsidiary "has been outstanding for over 15 years with no interest or principal paid" do not show corruption, impropriety, or deceit.
Id. at ¶ 60.
¶15 Accordingly, the majority affirmed the district court's judgment in favor of Oracle.
¶16 Judge Berger dissented from the portion of the majority's opinion concerning section 39-22-303(6). In his view, the term "abuse," as used in that provision, should be construed at least as expansively as the federal courts have construed tax abuse. Id. at ¶ 77. Judge Berger noted that federal courts have construed the concept of tax abuse broadly to include four related concepts: (1) the "sham transaction doctrine"; (2) the "economic substance doctrine"; (3) the "substance over form doctrine"; and (4) the "step transaction doctrine." Id. at ¶ 76. Judge Berger viewed the economic substance doctrine as the most pertinent here. Id. at ¶ 79. He explained that under that doctrine, courts will only accept a corporation's tax treatment of a transaction if the corporation "had a non-tax business purpose for the transaction and the transaction meaningfully improved the corporation's economic position apart from reducing its tax liability." Id. at ¶ 76. Applying that doctrine here, Judge Berger would have concluded that the capital gains realized by OJH were, in economic substance, realized by Oracle. Id. at ¶ 80. Accordingly, in his view, section 39-22-303(6) authorized the Department to reallocate that income to Oracle and to require Oracle to include that income in its consolidated Colorado income tax return. Id.
¶17 In so concluding, Judge Berger noted that he was not suggesting that OJH was formed for illegitimate purposes. Id. at ¶ 81. Indeed, he agreed that the record demonstrated the opposite. Id. He did not, however, perceive the pertinent statute or the economic substance doctrine to be limited to situations in which the device used to reduce taxes was somehow itself illegitimate or a sham. Id.
¶18 Nor did Judge Berger see any inconsistency between section 39-22-303(6), on the one hand, and sections 39-22-303(8), (11)(a), and (12)(c) and Colo. Code Regs. section 201-2:39-22-303.6, on the other. Id. at ¶¶ 82-83. In his view, the regulation conflicted with the plain language of section 39-22-303(6), and therefore the court was not required to apply it. Id. at ¶ 82. And with respect to sections 39-22-303(8), (11)(a), and (12)(c), Judge Berger did not see those provisions as overriding the Department's authority under section 39-22-303(6) to reallocate income to avoid abuse. Id. at ¶ 83.
¶19 Judge Berger therefore would have reversed the entry of summary judgment for Oracle and directed the entry of summary judgment for the Department. Id. at ¶ 85.
¶20 The Department petitioned this court for certiorari review, and we granted that petition.
II. Analysis
¶21 The Department makes the same arguments here that it made in Agilent Technologies , which we also announce today. Specifically, it contends that the division erred in concluding that sections 39-22-303(11) - (12), particularly when read in conjunction with section 39-22-303(8), did not authorize the Department to require Oracle to include OJH in its consolidated Colorado tax return. Even if those provisions could be read to preclude the Department from doing so, however, the Department alternatively contends that under section 39-22-303(6), it was nevertheless authorized to reallocate OJH's capital gains income to Oracle because such a reallocation was necessary to avoid abuse and to clearly reflect Oracle's income.
¶22 In Agilent Technologies , we fully considered and rejected the same legal arguments that the Department is making here. First, we concluded that sections 39-22-303(11) - (12) did not authorize the Department to require the corporate parent there at issue to include its holding company in its combined tax returns because the holding company was not an includable C corporation within the meaning of those provisions.
*1025 Agilent Techs. , ¶¶ 2, 17-29. Second, we determined that section 39-22-303(6) did not authorize the Department to allocate the holding company's income to the parent corporation because (1) that section has been superseded by section 39-22-303(11) as a vehicle for requiring combined reporting for affiliated C corporations and (2) even if section 39-22-303(6) could apply, on the undisputed facts presented there, no allocation would be necessary to avoid abuse or clearly reflect income. Id. at ¶¶ 2, 30-40.
¶23 We reach the same result here. In particular, for the reasons discussed at length in Agilent Technologies , we conclude that sections 39-22-303(11) - (12) did not authorize the Department to require Oracle to include OJH in its combined tax return for the tax period at issue because OJH was not an includable C corporation within the meaning of those provisions. We further conclude, also for the reasons set forth in Agilent Technologies , that section 39-22-303(6) did not authorize the Department to allocate OJH's capital gains to Oracle because (1) that section has been superseded by section 39-22-303(11) as a vehicle for requiring combined reporting for affiliated C corporations and (2) even if section 39-22-303(6) could apply, on the undisputed facts presented here, no allocation would be necessary to avoid abuse or clearly reflect income. Indeed, as the district court found, with ample record support, "Even if [ section 39-22-303(6) ] had not been superseded, there is no evidence of abuse to warrant the Department transferring OJH's income to Oracle."
III. Conclusion
¶24 Because the plain and unambiguous language of the pertinent statutory provisions and associated regulations demonstrate that the Department may not compel Oracle to include OJH in its combined return or otherwise to include OJH's income in that return, we conclude that the district court properly granted summary judgment in Oracle's favor and against the Department.
¶25 Accordingly, we affirm the judgment of the division below.

Specifically, we granted certiorari to review the following issues:
1. Whether a holding company that has no foreign property, payroll, or operations is exempt from Colorado taxation under the "Water's Edge" exemption, § 39-22-303(8), (12)(c), C.R.S.
2. Whether section 39-22-303(6) authorizes the Department to allocate a domestic holding company's income to its corporate parent to "clearly reflect" the parent's income and "avoid abuse."

As we did in Agilent Technologies , ¶ 3 n.2, we acknowledge that toward the end of the recently concluded legislative session, and after we heard oral argument in this case, the General Assembly passed Senate Bill 19-233, which had been introduced the week before our oral argument and which, if signed by the Governor, would amend section 39-22-303 to enact into law the interpretation of that statute that the Department has asked us to read into the current statute. For the reasons set forth in Agilent Technologies , this bill has no bearing on our analysis here.